CHARLES GOBER *et al.*, Plaintiffs-Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *et al.*, Defendants-Appellees.

Second District    No. 2—92—1452

Opinion filed June 8, 1994.—Rehearing denied July 29, 1994.

Robert G. Freyder, of Freyder & Associates, of Arlington Heights, for appellants.

Glen E. Amundsen and D. Dean Mauro, both of Querrey & Harrow, Ltd., of Waukegan, and Mary T. Nagel and Michael Resis, both of Querrey & Harrow, Ltd., of Chicago, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Charles and Helen Gober, brought this declaratory judgment action seeking to recover additional underinsured motorist benefits under several insurance policies issued by defendants, State Farm Fire and Casualty Company (State Farm Fire) and State Farm Mutual Automobile Insurance Company (State Farm Auto). Plaintiffs appeal from an order of the circuit court of Lake County granting defendants' motions for summary judgment. Plaintiffs contend the trial court misinterpreted the provisions for underinsured motorist coverage in their State Farm policies. We affirm.

The parties stipulated to the facts. Charles Gober sustained bodily injuries in an auto collision caused by Dean Galvin, an underinsured driver. In an action against Galvin, Charles sued for bodily injury and Helen sued for loss of consortium. Galvin's insurer, Allstate Insurance Company (Allstate), offered to settle Charles' claim for $10,000 and Helen's claim for $10,000. Together the settlement amounts represented Galvin's total liability policy limits of $20,000. After being notified by plaintiffs of Allstate's proposal, State Farm authorized the settlement and waived its right of subrogation. Allstate settled with plaintiffs, and Charles and Helen each received $10,000.

Charles then made a claim for underinsured motorist benefits for his personal injuries under four different State Farm insurance policies. Policy No. S22 9950—FO5—13, which was issued by State Farm Fire, was the primary underinsured motorist policy, and policy Nos. 921 9147—FO5—13, 921 9149—FO5—13, and 121 9148—FO5—13, issued by State Farm Auto, were excess underinsured motorist policies. All four policies contained underinsured motorist coverage limits in the amount of $100,000 per person and $300,000 per accident. Charles sought $90,000 of benefits under the State Farm Fire policy and an additional $20,000 of benefits under any one of the State Farm Auto policies. State Farm Fire paid Charles $80,000 under its policy, representing the difference between the single per-person limits of $100,000 and the $20,000 that Allstate had paid to Charles and Helen. Both defendants denied Charles' additional claims.

Subsequently, plaintiffs filed a complaint for declaratory relief, and both parties ultimately moved for summary judgment. The trial court granted defendants' motion, denied plaintiffs' motion, and rendered a declaratory judgment that the maximum amount of underinsured motorist coverage due under the four insurance policies was the $80,000 that State Farm had already paid to plaintiffs. Plaintiffs timely filed this appeal.

Where, as here, there are no genuine issues of material fact,

summary judgment is a proper method of disposing of a cause. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112; *Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 106.) However, summary judgment is a drastic remedy and should be allowed only when the moving party has a clear and certain right to judgment as a matter of law. (*Makowski v. City of Naperville* (1993), 249 Ill. App. 3d 110, 119; *Quinton v. Kuffer* (1991), 221 Ill. App. 3d 466, 470.) With these principles in mind, we turn to the parties' arguments.

■ We note initially that section 143a—2(4) of the Illinois Insurance Code (Code) states:

"The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3) (now codified, as amended, at 215 ILCS 5/143a—2(4) (West 1992)).)

State Farm Fire invokes this provision as authority for its contention that it is liable only for the difference between its stated $100,000 limit per person and the $20,000 Charles and Helen recovered from Allstate. Plaintiffs do not dispute the general proposition that an insurer's liability for underinsured motor vehicle coverage may be reduced based on the amount the insured receives under a policy on the underinsured vehicle. Rather, plaintiffs focus on the "actually recovered" language in the Code and maintain that Charles himself received only $10,000 from Allstate. They urge that State Farm Fire was entitled to set off only that $10,000 since that is all Charles actually recovered.

■ Similarly, plaintiffs rely on language found in an endorsement to their policy and in a notice calling policyholders' attention to the changes effected by the endorsement. The endorsement created a new "Limits of Liability" provision which addressed underinsured motor vehicle coverage as "Coverage W." Section 4a under "Coverage W" in the endorsement states:

"4. The most we will pay any one insured is the lesser of:

a. the difference between the 'each person' limit of this coverage and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury caused by an underinsured motor vehicle."

The notice to policyholders explains:

"The 'Limits of Liability' provision regarding Underinsured Motor Vehicle—Coverage W has been clarified. When determining limits of liability under Coverage W, we take into consideration those

amounts paid to the insured on behalf of the one legally liable for the bodily injury caused by an underinsured motor vehicle." Plaintiffs focus on the phrases "*one* insured" (emphasis added) and "paid to *the* insured" (emphasis added) as found in the endorsement and notice. They assert that the words "one" and "the" refer only to Charles and that Charles himself was paid only $10,000 by Allstate. Again, plaintiffs conclude that State Farm Fire should have set off only $10,000 since that is all that was actually paid to Charles. Plaintiffs steadfastly maintain that the policy contains no language which allows State Farm Fire to reduce Charles' benefits by the amount Allstate paid to Helen for her loss of consortium claim. This argument cannot be sustained.

Where the facts are not contested, the construction of an insurance policy is a question of law, and a reviewing court may examine such a policy *de novo*. (*Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 106; *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 1021.) As a general rule, when construing an insurance policy, the rules of contract construction are applicable. (*Jensen v. USAA Property & Casualty Insurance Co.* (1993), 246 Ill. App. 3d 66, 71.) All parts of an insurance contract must be considered together in order to discern the meaning and intent of the parties. (*Grevas v. United States Fidelity & Guaranty Co.* (1992), 152 Ill. 2d 407, 410.) Upon application of these rules we find little support for plaintiffs' position.

It is readily apparent from the language of the policy itself that the underinsured motor vehicle coverage in the State Farm Fire policy provided benefits for bodily injury sustained by an insured. Plaintiffs do not contend otherwise. In accord with its intent to pay damages specifically for bodily injury, the policy also makes clear that the amount payable to an insured may be reduced by any amount paid to the insured *for bodily injury*, by a party legally liable for the bodily injury. This can be seen in both the endorsement and the notice cited by plaintiffs. Likewise, under the Code language invoked by plaintiffs, State Farm Fire was entitled to reduce the amount it paid to Charles by those amounts recovered "under the applicable bodily injury insurance" on the underinsured vehicle. Consequently, if Helen recovered under the bodily injury insurance on Galvin's car, State Farm Fire properly set off the amount of her recovery.

The record shows that Allstate paid both Charles and Helen pursuant to the coverage in Galvin's policy for liability for bodily injury to Charles. While plaintiffs explain that Charles' claim against Allstate was for personal injuries and Helen's claim was for loss of

consortium, they nowhere suggest that Helen's claim was covered anywhere in the Allstate policy other than by the coverage provided for bodily injury to Charles. In fact, plaintiffs stipulated that the Allstate policy had a liability limit of $20,000 and further stated in their reply brief:

> "In the instant case, the tortfeasor's liability insurance had liability limits of $20,000 per person and $40,000 per occurrence. Pursuant to that policy's language and definitions, that policy limited the claims of CHARLES GOBER and HELEN GOBER to a single $20,000 limit of recovery."

In addition, an exhibit attached to the parties' stipulation of facts reflects the settlements received by Charles and Helen from Allstate. Each of the settlements expressly states that it is "[f]inal settlement of any and all claims arising from *bodily injury* caused by accident on 10/06/90." (Emphasis added.) The record is clear and, as we said, plaintiffs never really deny, that Helen did, indeed, recover under the bodily injury insurance on the car of Galvin, the underinsured motorist. Since Allstate's payment to Helen was made as part of a larger, overall payment for the bodily injury caused to Charles, State Farm Fire properly reduced its benefit by the $10,000 paid to Helen in addition to the $10,000 paid to Charles.

Plaintiffs' focus on the fact that part of the money due to Charles was paid directly to Helen is based on isolated language in the State Farm Fire policy and is misplaced. The thrust of the policy language is to allow a setoff for any amount previously paid for bodily injury sustained by an insured at the hands of an underinsured motorist. That part of the amount may have been paid to one other than the insured himself is simply not significant.

As a final observation, we note plaintiffs' declaration in their reply brief that "[o]ther liability policies allow loss of consortium claims to be entitled to an additional separate per person limit." Plaintiffs correctly direct us to *General Casualty Co. v. McCowan* (1991), 221 Ill. App. 3d 96, in support of this statement. The authority is of no help to plaintiffs, however, because, as they recognize in the sentence immediately preceding the one we have quoted: "Pursuant to [the Allstate] policy's language and definitions, that policy limited the claims of CHARLES GOBER and HELEN GOBER to a single $20,000 limit of recovery." That recovery was solely for the bodily injury incurred by Charles. Defendants were entitled to summary judgment as a matter of law on this issue, and their motion on the matter was correctly granted.

■ We turn now to plaintiffs' contention that Charles is entitled to recover $20,000 of additional underinsured motorist benefits under

any one of the three State Farm Auto policies which provide excess insurance. Plaintiffs rely on the following language which is found in all three of the excess policies:

"If the insured sustains bodily injury while occupying a vehicle which is not your car, coverage under this policy applies:

a. as excess to any underinsured motor vehicle coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds the primary coverage."

There is no dispute that Charles sustained bodily injury while occupying a vehicle which "is not your car," as that phrase is used in the policy.

Plaintiffs emphasize the reference to "primary coverage" in subsection b of the policy provision. They argue essentially that the amount of the primary coverage is $80,000, since that is all State Farm Fire would pay Charles on its policy. Noting that "primary coverage" is not explained or defined in the policy itself, plaintiffs propose that, at the very least, the phrase is ambiguous and, therefore, must be resolved in their favor. While it is true, as plaintiffs point out, that the applicability of a limitation clause must be clear and free from doubt, and any doubt will be resolved in favor of the insured (see *Monsalud*, 210 Ill. App. 3d at 108), the invocation of this rule is not helpful here since we do not find the ambiguity asserted by plaintiffs.

In construing a contract, words should be given their plain and ordinary meaning. (*Strzelczyk v. State Farm Mutual Automobile Insurance Co.* (1985), 138 Ill. App. 3d 346, 349.) The various parts of an insurance contract must be considered as a whole in order to determine the meaning of the parties. (*Grevas*, 152 Ill. 2d at 410.) Once again, plaintiffs want us to read a policy provision in isolation. Once again, we decline to do so.

The language cited by plaintiffs appears under the title, "If There Is Other Underinsured Motor Vehicle Coverage." Part 3 under the title is set forth in two sections, the first of which contains the language specified by plaintiffs and quoted above. The second section provides:

"If coverage under more than one policy issued by us or any other insurer applies as excess:

a. the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued

by us bears to the total of all underinsured motor vehicle coverage applicable as excess to the accident."

As can be seen, part 3 in its entirety pertains to coverage under the excess policies *vis-a-vis* coverage under the primary policy.

With regard to the coverages addressed in part 3, subsection a of the second part of part 3 specifically refers to "the limit of liability of the coverage that applies as primary" and "the highest limit of liability" of the coverages applicable as excess. In our view, this language leaves no doubt that "primary coverage," as used in the State Farm Auto polices, refers to the limit of liability declared in the primary policy, rather than the amount State Farm Fire paid to Charles.

Plaintiffs suggest that the second portion of part 3 is not applicable because it merely precludes the stacking of excess policies, and they are not attempting to stack such policies. However, the first section of part 3 is also essentially geared to prevent stacking, not of excess policies exclusively, but of an excess policy on top of a primary policy. That is why the section provides coverage only in the amount the excess coverage exceeds the primary coverage. We note, also, that part 3 is only one portion of a larger provision in the policy, and the entire provision is addressed to situations where there is other underinsured motor vehicle coverage. Hence, the various sections of part 3 are all elements of an overall plan for dealing with multiple policies. The sections, although separate from one another, share the same general goal and use the same general means to achieve that goal. Thus, we find it only reasonable that all portions of part 3 should be read together.

While subsection b of the first portion of part 3 does not expressly define "primary coverage," we think that the phrase, when read in context, is not ambiguous. It clearly refers to the limit of liability of the primary policy. It is not contested that the limit of liability in the primary policy is $100,000, which is the same as the limit of liability in the excess policies. Consequently, the coverage of the excess policies does not exceed the coverage of the primary policy, and Charles is not entitled to recover anything under the excess policies. Defendants were also properly granted summary judgment as to this issue.

For the foregoing reasons the order of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and QUETSCH, JJ., concur.