SIXTH DIVISION

MARCH 17, 2000

No. 1-99-0884

LARRY S. SMITH, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY.

)

v. )

)

ALLSTATE INSURANCE COMPANY, ) HONORABLE

) ALBERT GREEN,

Defendant-Appellee. ) JUDGE PRESIDING.

MODIFIED ON DENIAL OF REHEARING

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Larry Smith appeals an order of the circuit court of Cook County granting summary judgment in favor of defendant Allstate Insurance Company (Allstate) in a declaratory judgment action.  The record on appeal indicates that this appeal is related to this court's prior decision in 
Smith v. Allstate Insurance Co.
, 292 Ill. App. 3d 432, 686 N.E.2d 74 (1997).  Although many of the facts relevant to this appeal appear therein, a brief restatement of the case follows, along with additional facts relevant to this appeal.

On July 8, 1994, plaintiff filed a complaint for declaratory judgment against defendant.  The complaint alleged that on January 21, 1993, plaintiff was driving a car east on Golf Road, near the intersection with Narragansett Street, in Morton Grove.  Michael Garrity was driving west on Golf Road; Brian Barry and Brendan Mahoney were passengers in the car Garrity was driving.  According to the complaint, Garrity negligently caused a colli

sion between the car he was driving and Smith's car.  Plaintiff's complaint further alleges that the collision caused him to suffer severe and permanent injuries, including spinal injuries, incom

plete paraplegia, prosthetic hypertrophy and sexual dysfunction.  

Plaintiff, plaintiff's wife Phyllis, Mahoney, the estate of Barry and three Barrys individually (the Barrys), all filed suit against Michael Garrity and John Garrity, the owner of the car operated by Michael Garrity.  The record in this case contains a copy of the First Amended Complaint Larry and Phyllis Smith filed against the Garritys.  Count I, sounding in negligence, was brought by Larry Smith.  Count II, brought by Phyllis Smith, sought damages for loss of consortium, alleging that as a result of negligently caused injury to Larry, she had "been deprived, and is reasonably certain to be deprived in the future, of the society, companionship and conjugal relationship with her hus

band."

On January 21, 1993, Michael Garrity was an insured driver under a policy issued by State Farm Insurance Company (State Farm) to John Garrity, the owner of the car operated by Michael Garrity.  The single limit liability coverage under the State Farm Policy was $100,000 per person/$300,000 per occurrence.  Michael Garrity also had $2,000,000 in umbrella coverage from State Farm at the time of the collision.  Thus, the maximum coverage available to satisfy the aforementioned claims was $2,300,000.

During the pretrial proceedings in the Garrity matter, State Farm agreed to tender the policy limits on behalf of the Garritys, provided that the matter was settled as to all four claimants.  On March 16, 1994, the trial court entered an order granting the Garritys motion for a good faith settlement order.  The order dismissed the claims against the Garritys with preju

dice and without costs, with the following amounts being paid in settlement: (1) Larry Smith -- $600,000; (2) Phyllis Smith -- $350,000; (3) the Barrys -- $950,000; and (4) Mahoney -- $400,000.  

Plaintiff attached copies of releases purportedly signed by Larry and Phyllis Smith in the Garrity case to his appellate brief, though he does not note where they appear in the record on appeal.  The identically worded documents purport to release the Garritys 

"from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and un

known, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 21st day of January, 1993, at or near Golf Rd. & Narragansett, Chicago, Cook County, Illinois."

A claim brought by the Barrys against Larry Smith was also dismissed with prejudice, without costs or any amount being paid in settlement.

Plaintiff's complaint for declaratory judgment in this matter alleged that on January 21, 1993, plaintiff's car was insured by defendant Allstate.  The record shows that Larry and Phyllis were named insureds on an Allstate Policy which provided in part as follows:

"
Part V -- Uninsured Motorists Coverage -- Coverage SS

We will pay damages for bodily injury or property damage which a person insured is legally entitled to recover from the owner or operator of an uninsured auto."

The policy also defines an uninsured auto not only as a motor vehicle for which no insurance was in effect at the time of the accident, but also as an underinsured auto, which is a motor vehicle which has insurance below the limits of liability shown on the declarations page of the insureds' Allstate policy.

Furthermore, the policy at issue provided in part as fol

lows:

"Limits of Liability

(1) The coverage limits on the declarations page for:

(a) "each person" is the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident.

(b) "each accident" is the total limit for all damages arising out of bod­

ily injury to two or more persons in any one motor vehicle accident.

***

The uninsured motorists limits apply to each insured auto as stated on the declarations page.  This means the insuring of more than one person or auto under this or other auto policies will not increase our uninsured motorists limit of liability beyond the amount shown for any one auto, even though a separate premium is charged for each auto.

*****

In addition, the limits for Coverage SS will be reduced by all amounts paid by or on be

half of the owner or operator of the underinsured motor vehicle."

Plaintiff had uninsured/underinsured motorist (UIM) coverage of $1 million per person, $1 million per occurrence under the Allstate policy.  

Plaintiff demanded that Allstate tender a $400,000 draft, representing the difference between the limit of the Allstate policy and the amount plaintiff received in settlement of his claim against the Garritys.  Allstate refused on the ground that the limits of the Garritys' policies exceeded the limit of the Allstate UIM coverage.

On October 17, 1994, defendant Allstate filed a motion for judgment on the pleadings, pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(e)(West 1994)), arguing that the Garrity car was not underinsured because the Garritys had $2.3 million in coverage -- more than the limit of the Allstate policy.  On March 31, 1995, following a hearing on the matter, the trial court granted defendant's motion.  Plaintiff appealed to this court, which reversed and remanded, holding that the Garrity car was an underinsured motor vehicle section 143a-2(4) of the Illinois Insurance Code (Code)(215 ILCS 5/143a-2(4) (West 1992)).  
Smith v. Allstate Insurance Co.
, 292 Ill. App. 3d 432, 686 N.E.2d 74 (1997).

Following this court's decision, Allstate paid Larry Smith $50,000, an amount not in dispute.  Although the parties have failed to provide record citations to the relevant pleadings in this appeal, it is also undisputed that the parties both moved for summary judgment on the issue of whether Allstate was re

quired to pay Larry Smith an additional $350,000 or could apply the $350,000 settlement State Farm paid to Phyllis Smith as a setoff.  The record does contain memoranda submitted by the parties in support of their respective motions.

On February 3, 1999, the trial court entered an order granting summary judgment in favor of Allstate.  Plaintiff claims he filed a Notice of Appeal to this court on March 2, 1999.  Although plaintiff failed to include a copy of the Notice of Appeal in his brief in violation of Supreme Court Rules 341 and 342, the fact sheet generated from the computerized records of our clerk's office corroborates that date.

The issue on review is whether the trial court erred in granting summary judgment to Allstate.  Where there are no genuine issues of material fact, summary judgment is a proper method of disposing of a cause.  
Gober v. State Farm Mutual Automobile Ins. Co.
, 263 Ill. App. 3d 846, 847-48, 636 N.E.2d 1016, 1018 (1994).  However, summary judgment is a drastic remedy and should be allowed only when the moving party has a clear and certain right to judgment as a matter of law.  
Gober
, 263 Ill. App. 3d at 848, 636 N.E.2d at 1018.  In addition, where the facts are not contested, the construction of an insurance policy is a question of law, and this court may examine such a policy 
de novo
.  
Gober
, 263 Ill. App. 3d at 849, 636 N.E.2d at 1018.

In granting summary judgment, the trial court relied in part on a line of Illinois cases holding that loss of consortium claims may be subject to an insurance policy's single per-person coverage limit, where the language of the policy so provides.  See, 
e.g.
, 
Ravenswood Hospital v. Maryland Casualty Co.
, 280 Ill. 103, 109, 117 N.E. 485, 488 (1917); 
Economy Preferred Ins. Co. v. Ingold
, 302 Ill. App. 3d 360, 363, 707 N.E.2d 983, 985 (1999); 
Schweighart v. Standard Mutual Ins. Co.
, 227 Ill. App. 3d 249, 252-53, 591 N.E.2d 121, 123-24 (1992); 
Cross v. Country Cos.
, 188 Ill. App. 3d 847, 850, 544 N.E.2d 1246, 1248 (1989); 
Creamer v. State Farm Mutual Automobile Insurance Co.
, 161 Ill. App. 3d 223, 224-25, 514 N.E.2d 214, 215 (1987); 
Gass v. Carducci
, 52 Ill. App. 2d 394, 402, 202 N.E.2d 73, 76-77 (1964).  The trial court also relied on the Second District's decision in 
Gober
, which held that the insurer properly set off the amount paid to a couple in settlement of bodily injury and loss of consortium claims against the injured spouse's claim for underinsured motorist benefits.  
Gober
, 263 Ill. App. 3d at 849-50, 636 N.E.2d at 1019.

The function of a court in construing an insurance policy is to ascertain and enforce intention of parties as expressed in the agreement; the contract should be construed as a whole and the construction given the policy should be the natural and reason

able one.  
E.g.
, 
de los Reyes v. Travelers Ins. Companies
, 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304 (1990); see 
Gober
, 263 Ill. App. 3d at 849, 636 N.E.2d at 1019.  The purpose of the underinsured motorist statute and policies written thereunder is to place the insured in the same position he or she would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder.  See, 
e.g.
, 
Smith
, 292 Ill. App. 3d at 436, 686 N.E.2d at 77.  In light of this purpose, the meaning of the setoff provisions of the underinsured motorist statute and policies written thereunder is to prevent a double recovery by the insured.  See 
Hoglund v. State Farm Mutual Automobile Ins. Co.
, 148 Ill. 2d 272, 277, 592 N.E.2d 1031, 1034 (1992) (reaching this conclusion in the context of uninsured motorist coverage).  Keeping these principles in mind, we turn to the language of the Allstate policy.

We begin with the basic statement of the scope of Coverage SS, which provides that Allstate "will pay damages for bodily injury or property damage which a person insured is legally entitled to recover from the owner or operator of an uninsured auto."  In most liability insurance policies, the term "bodily injury" is defined to mean "bodily injury, sickness or disease."  See 
Zurich Insurance Co. v. Raymark Industries, Inc.
, 118 Ill. 2d 23, 33, 514 N.E.2d 150, 154 (1987).  Loss of consortium is a personal injury, not a bodily injury.  
Schweighart
, 227 Ill. App. 3d at 249, 591 N.E.2d at 123-24, citing 
Creamer
, 161 Ill. App. 3d at 224, 514 N.E.2d at 216.  Thus, the typical definition of "bodily injury" does not include loss of consortium.

However, where a policy defines bodily injury to mean "injury, sickness or disease," use of the broader term "injury" has led this court to hold that "bodily injury" encompasses coverage for loss of consortium claims.  
E.g.
, 
General Casualty Co. v. McCowan
, 221 Ill. App. 3d 96, 99-100, 581 N.E.2d 728, 729-

30 (1991); 
Filip v. North River Ins. Co.
, 201 Ill. App. 3d 351, 354-55, 559 N.E.2d 17, 19-20 (1990).  Interestingly, the record shows that Coverages AA and BB of the policy originally issued to plaintiff expressly included "loss of services" in the definition of bodily injury.  In contrast, Coverage SS expressly and repeatedly uses the typical definition of bodily injury, barring payment for loss of consortium.

The basic statement of coverage here differs from the language considered by this court in prior cases.  For example, in 
Creamer
, the policy stated that each insured was covered for all damages "due to" bodily injury to one person.  
Creamer
, 161 Ill. App. 3d at 224, 514 N.E.2d at 215.  In 
Cross
, the policy required the insurer to pay all sums recoverable as damages "because of" bodily injury.  
Cross v. Country Cos.
, 188 Ill. App. 3d at 849, 544 N.E.2d at 1247.  In 
Schweighart
, the policy also required the insurer to pay all sums recoverable as damages "because of" bodily injury.  
Schweighart
, 227 Ill. App. 3d at 250, 591 N.E.2d at 122.  These phrases are all broader than the phrase "for bodily injury," as each suggests payment for damages suffered by more than one insured that result from a bodily injury, regardless of which insured suffered the bodily injury.

In its petition for rehearing, Allstate correctly notes that this court originally cited no authority for the proposition that the phrase "damages for bodily injury" is narrower than phrases such as "damages because of bodily injury" or "damages due to bodily injury."  This court did, however, state the general rule that the contract should be construed as a whole and the con

struction given the policy should be the natural and reasonable one.  
de los Reyes
, 135 Ill. 2d at 358, 553 N.E.2d at 304.  If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning.  
American States Ins. Co. v. Koloms
, 177 Ill.2d 473, 479, 687 N.E.2d 72, 75 (1997).  Conversely, if the words in the policy are susceptible to more than one reasonable interpretation, they are deemed ambiguous.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill.2d 90, 108-09, 607 N.E.2d 1204, 1212 (1992).

Keeping these basic rules in mind, this court notes that while the basic statement of Coverage SS refers to "damages for bodily injury," Coverages AA and BB of the policy originally issued to plaintiff provided that Allstate would "pay for damages a person insured is legally obligated to pay - because of bodily injury," then included "loss of services" in the definition of bodily injury.  This language demonstrates that Allstate, as the drafter of the policy, used the phrase "because of bodily injury" to expressly include loss of consortium when this is what was meant.

Throughout this litigation, Allstate has maintained that Phyllis Smith did not have a claim for bodily injury but never

theless suffered "damages for bodily injury."  Allstate's Third Amended Defense asserts that loss of consortium claims "are not claims for 'bodily injury' as defined in the Policy."  Yet All­

state suggests in its petition for rehearing that Phyllis Smith has "damages for bodily injury," because they are damages "which resulted to her when Larry Smith suffered 'bodily injury.'"  Allstate's argument is based on the derivative nature of a claim for loss of consortium.  Our supreme court has affirmed that a consortium claim is both "independent" and "derivative."  
Blagg v. Illinois F.W.D. Truck and Equipment Co.
, 143 Ill. 2d 188, 196-

97, 572 N.E.2d 920, 924-25 (1991).  This appeal is to be decided by the policy language, rather than the theoretical intricacies of the loss of consortium concept.  See 
Club Exchange Corp. v. Richter
, 221 Ill. App. 3d 77, 79-80, 581 N.E.2d 709, 710 (1991).  However, to the extent that Allstate asserts that the phrase "damages for bodily injury" encompasses damages that derive from or result from the bodily injury of another, it suffices to note that Allstate does not apply the same definition when discussing "claims for bodily injury," despite the fact that damages are an element of a claim.

Allstate asserts in its petition for rehearing that it "has never questioned that Mrs. Smith could have asserted a claim under Coverage SS for her loss of consortium damages."  Allstate does not state that it would have voluntarily paid that claim.  Instead, Allstate states that a loss of consortium claim would have been subject to the policy's terms and conditions, a formu

lation leaving open the possibility that coverage would have been denied under some interpretation of the policy.  Allstate addi

tionally suggests that this court would have rejected any argu

ment that the loss of consortium claim was not covered by the policy.  The fact that Allstate does not state that it would have voluntarily paid and discusses whether it would have been forced to pay by a court may be considered indicative of Allstate's understanding the scope of its policy language.

Moreover, assuming 
arguendo
 that Allstate was correct in its speculation that this court would have interpreted the policy to include claims of loss of consortium had Phyllis Smith made such a claim against the policy, it does not follow that the policy must be similarly construed in the context presented in this appeal.  It is true that ambiguous terms in an insurance policy generally are construed strictly against the drafter of the policy and in favor of coverage.  
Outboard Marine Corp.
, 154 Ill. 2d 90, 119, 607 N.E.2d at 1217.  However, the reason for this rule is twofold: (1) the intent of an insured in purchasing an insurance policy is to obtain coverage, and therefore any ambigu

ity jeopardizing such coverage should be construed consistent with the insured's intent; and (2) 
the insurer is the drafter of the policy and could have drafted the ambiguous provision clearly and specifically
.  
E.g.
,  
Elson v. State Farm Fire and Casualty Co.
, 295 Ill. App. 3d 1, 11, 691 N.E.2d 807, 814 (1998).  The rule and its underlying reasons derive from the fundamental and long-standing doctrine that the general principles governing the interpretation of insurance contracts do not differ from those controlling in other contracts.  
E.g.
, 
Dempsey v. National Life & Accident Ins. Co.
, 404 Ill. 423, 426, 88 N.E.2d 874, 876 (1949);  
Elson
, 295 Ill. App. 3d at 6, 691 N.E.2d at 811.  

The Restatement (Second) of Contracts explains the general rule that ambiguous contract language is to be construed against the drafter as follows:

"Where one party chooses the terms of a contract, he is *** more likely than the other party to have reason to know of uncer

tainties of meaning.  Indeed, he may deliber

ately obscure, intending to decide at a later date what meaning to assert.  In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party.  The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position ***."  Restatement (Second) of Con

tracts § 206, comment 
a
 (1981).

The case law interpreting insurance contracts amply demonstrates the justification for this rationale.  In this case, even if Allstate were correct to claim that the phrase "damages for bodily injury" is ambiguous, the fact that the insurer, as drafter, could have and in fact did use much clearer language regarding loss of services in its prior dealings with the insured weighs strongly in favor of rejecting the insurer's interpreta

tion, which would theoretically broaden the scope of coverage in some general sense, but would actually operate to deny the plaintiff recovery in this case.

Allstate's argument is weak even as a matter of semantics.  Dictionaries contain many definitions of the word "for," such as "to the amount of *** or extent of," or "as being" that precede the possible meaning denoting "because."  
E.g.
, Webster's Third New International Dictionary of the English Language at 886 (1981); American Heritage Dictionary at 522 (2d College ed. 1982).  Indeed, at least one dictionary classifies the usage of "for" to denote "by reason that," "for the reason that" or "because" as archaic.  Webster's Third New International Dictio

nary of the English Language at 886.  An archaic meaning is generally not the plain and ordinary meaning.  See Webster's Third New International Dictionary of the English Language at 111; American Heritage Dictionary at 124.

In sum, while there is no ambiguity within the basic state

ment of coverage, the interpretation of the scope of coverage offered by Allstate is also rejected as a matter of contract interpretation.

The Allstate policy later states that the coverage limits on the declarations page represent "the total limit for all damages arising out of bodily injury ***."  Allstate argues that this language encompasses claims of loss of consortium in the limits of liability.  Allstate therefore concludes that it may reduce those limits by all amounts paid for loss of consortium on behalf of the owner or operator of the underinsured motor vehicle to persons insured under its policy.

Allstate's petition for rehearing discusses the Illinois Supreme Court's decision in 
McKinney v. Allstate Ins. Co.
, No. 87248 (Dec. 19, 1999), which was decided after the original opinion was filed in this appeal.  
McKinney
, like 
Ravenswood Hospital
 and its progeny, addressed the issue of whether a per-

person or per-occurrence limit applied to loss of consortium or Survival Act claims.  Although the Allstate policy in 
McKinney
 used a definition of "bodily injury" similar to that at issue here, the 
McKinney
 court did not quote the basic statement of uninsured motorist coverage, as it was not at issue.  Thus, 
McKinney
 contains no suggestion or argument that the limits of liability clauses were in tension with the basic statement of UIM coverage or that the claims at issue might be outside the scope of the policy.  In contrast, this case involves Allstate's claim for a setoff against amounts made to the plaintiff's wife.  In this context, even Allstate concedes it is proper to decide whether the plaintiff's wife could recover under the policy.

While Allstate's interpretation of the limits clauses here might have been considered reasonable if read in isolation, we are required to read the policy as a whole.  The basic statement of Coverage SS excludes claims of loss of consortium.  It would be unreasonable and absurd to conclude that the parties neverthe

less intended to include these excluded amounts in defining the limits stated on the declarations page and in reducing said limits of liability.

Allstate could have argued (but did not argue) that the limits of liability clause should be read as modifying the basic statement of coverage, such that Allstate would be required to pay claims of loss of consortium.  This interpretation would avoid the absurd result described above.  In addressing this possible interpretation, we note that in 
Ingold
, the court did not quote the basic statement of coverage, but the limits of liability clause expressly modified the term "bodily injury" to  include all damages, including loss of services, arising out of bodily injury.  
Ingold
, 302 Ill. App. 3d at 362, 707 N.E.2d at 985.  

As noted above, Allstate similarly modified the term "bodily injury" to expressly include loss of services in Coverage AA of the original policy, but chose to use the standard definition of "bodily injury" in Coverage SS.  An insurer may choose to cover claims for loss of consortium and subject such claims to a single per-person limit, but it must do so unambiguously.  See 
Stearns v. Millers Mutual Insurance Ass'n
, 278 Ill. App. 3d 893, 899, 663 N.E.2d 517, 521 (1996).
(footnote: 1)  Otherwise, as the analysis above sug

gests, an insurer would be free to argue contrary positions in different cases to its benefit.  For example, an insurer could deny coverage for claims of loss of consortium in the uninsured motorist context, while admitting coverage to obtain a setoff in a case similar to this one.

In sum, Allstate has failed to unambiguously cover loss of consortium and subject such claims to a limit of liability.  Thus, we must prefer the meaning operating against the drafter and conclude that the Allstate policy at issue excludes claims for loss of consortium.

We recognize that in 
Gober
, this court held that the insurer properly set off the amount paid to a couple in settlement of bodily injury and loss of consortium claims against the injured spouse's claim for underinsured motorist benefits.  
Gober
, 263 Ill. App. 3d at 849-50, 636 N.E.2d at 1019.  However, 
Gober
 does not address the issue that arises where, as here, the under­

insured motorist coverage excludes claims for loss of consortium.  Thus, 
Gober
 is distinguishable.

In sum, given the facts and circumstances of this case, the Allstate policy excludes a claim of loss of consortium by Phyllis Smith.  Since Phyllis Smith could not recover under this Allstate policy, no setoff of the amount paid to her by State Farm on behalf of the Garritys is required to prevent a double recovery.  Accordingly, the trial court erred in granting summary judgment to Allstate.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed, and the case is re

manded for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY, J., and O'BRIEN, J., concur.

FOOTNOTES
1:  Allstate's petition for rehearing correctly notes that 
McKinney
, which was filed after the original opinion in this appeal, overrules 
Stearns
.  However, the 
McKinney
 court did so "[b]ecause the 
Stearns
 court found an ambiguity where none existed."  
McKinney
, No. 87248 (Dec. 16, 1999), at 6.  This court does not read 
McKinney
 as eliminating the general rules regarding ambiguity in insurance policies, as it restates them prior to discussing 
Stearns
.  
McKinney
, No. 87248 (Dec. 16, 1999), at 3-4.