FIRST DIVISION

December 17, 2001
 

No. 1-00-2849

FIDELITY AND CASUALTY COMPANY, ) Appeal from the 

) Circuit Court of 

Plaintiff-Appellee, ) Cook County

)

v. ) 

) No. 99 CR 7541

DORIS MERRIDEW, as Adm'r ) 

of the Estate of Reginald Merridew,) 

and DORIS MERRIDEW, Indiv., ) The Honorable

) Stephen A. Schiller,

Defendants-Appellants. ) Judge Presiding.

JUSTICE COUSINS delivered the opinion of the court:

In June 1997, Reginald Merridew was involved in an automobile accident with a vehicle driven by Jack Torcolese.  Reginald Merridew filed an action against Torcolese seeking damages for his bodily injuries.  His wife, Doris Merridew, brought an action against Torcolese alleging loss of consortium.  Torcolese was insured for automobile liability by Unitrin Property & Casualty Company (Unitrin).  The Merridews were insured by Fidelity & Casualty Company (Fidelity).  After the suits were settled, Doris Merridew made a claim against Fidelity for underinsured motorist coverage.  Fidelity sought a declaration that it did not owe underinsured motorist coverage to Doris Merridew or to Reginald Merridew's estate.  Fidelity subsequently filed a motion for summary judgment.  Doris Merridew filed a cross-motion for summary judgment against Fidelity.  On July 19, 2000, the trial court granted Fidelity's motion for summary judgment and denied Doris' cross-motion for summary judgment.

Doris Merridew, individually and as special administrator of Reginald’s estate, now appeals the trial court's July 19, 2000, order.  Doris Merridew presents the following issue upon appeal:  whether Torcolese was an underinsured motorist pursuant to the terms of the Fidelity policy.

BACKGROUND

On June 11, 1997, 81-year-old Reginald Merridew was involved in an automobile collision with Jack Torcolese.  Merridew was hospitalized for over 90 days and his medical expenses exceeded $300,000.  Merridew filed a personal injury suit against the driver.  His wife, Doris Merridew, brought a loss of consortium suit.  In July 1998, Reginald Merridew died after undergoing gallstone surgery that was unrelated to the accident.  On August 10, 1998, Doris Merridew was appointed special administrator of Reginald Merridew’s estate.  

At the time of the accident, Torcolese was insured by Unitrin.  The policy issued by Unitrin contained a single liability limit of $500,000.  Reginald Merridew and Doris Merridew were named insureds on a motor vehicle insurance policy issued by Fidelity for the period covering September 9, 1996, through September 9, 1997.  The Fidelity policy included an underinsured motorist coverage endorsement with a $500,000 limit for underinsured motorist liability coverage.  The underinsured motorist coverage endorsement provides:

   "
DEFINITIONS

   ***

   1. 
Covered Person
 means:

   a. You for the ownership, maintenance or use of any vehicle; 

* * *

    5. 
Underinsured Motor Vehicle
 means a land motor vehicle or trailer of any 
type to which a 
bodily injury
 liability
 bond or 
policy applies
 at the time of the 
accident
 
but its limit for 
bodily injury
 liability
:

   a. Is less than the limit of liability for Underinsured Motorists coverage.

   b. 
Has been reduced by payments to other p[e]rsons injured in the 
accident
 
to an amount less than the limit of liability for this coverage.

* * *

INSURING AGREEMENT

   We will pay compensatory damages which any 
covered person
 is legally entitled to recover from the owner or operator of an 
underinsured motor vehicle 
because of 
bodily injury
:

   1. Sustained by any 
covered person
; and

   2. Caused by an accident arising out of the ownership, maintenance or use of an 
underinsured motor vehicle
.

* * * 

LIMIT OF LIABILITY

   1. The limit of liability shown in the Coverage Summary for this coverage is our maximum limit of liability for all damages, resulting from any one 
motor vehicle accident
.  

   This is the most we will pay regardless of the number of:

   a. 
Covered persons
;

   b. Claims or suits made; 

   c. Vehicles involved in an 
accident
 
or shown in the Coverage Summary; 

   d. Persons who sustain injury or damage ***.

* * *

   2. Except 
in the event of a 
settlement agreement,
 the limit of liability shall be reduced by all sums paid because of the 
bodily injury
 by
 or on behalf of 
persons
 or organizations 
who may be legally responsible
."  (Emphasis original and added.)

Reginald Merridew's underlying personal injury action was settled on behalf of his estate in the amount of $350,000.  The loss of consortium action on behalf of Doris Merridew was settled for $150,000. 

Doris Merridew and the estate of Reginald Merridew subsequently filed a claim against Fidelity for underinsured motorist coverage.  On May 19, 1999, Fidelity filed a complaint for declaratory judgment seeking the following determinations:

   "A. That the accident of June 11, 1997 involving Reginald Merridew and Jack Torcolese did not involve an underinsured motor vehicle as defined by the Fidelity & Casualty policy.

   B. That the Unitrin policy issued to Jack Torcolese contained a single limit of liability coverage in the amount of $500,000, which Unitrin paid for the bodily injury sustained by Reginald Merridew.

   C. That Fidelity & Casualty Company owes no Underinsured Motor Vehicle Coverage to the Estate of Reginald Merridew and/or Doris Merridew."

Doris Merridew, individually and as administrator of Reginald Merridew’s estate, filed an answer to Fidelity's complaint for declaratory judgment.  Fidelity filed a motion for summary judgment, asserting that no underinsured motorist coverage was owed under its policy.  Doris Merridew filed a cross-motion for summary judgment asserting that because the estate of Reginald Merridew only received $350,000, the estate was entitled to an additional $150,000 of coverage and since Doris Merridew received only $150,000, she was entitled to an additional $350,000.  On July 19, 2000, the trial court entered an order granting Fidelity's motion for summary judgment and denying Doris Merridew's cross-motion for summary judgment.  Doris Merridew now appeals.  

We affirm.

ANALYSIS

Where there are no genuine issues of material fact, summary judgment is a proper method of disposing of a cause.  
Bailey v. Allstate Development Corp.
, 316 Ill. App. 3d 949, 953, 738 N.E.2d 189 (2000).  Accordingly, appellate review of an order granting summary judgment is 
de
 
novo
.  
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 374, 695 N.E.2d 853 (1998).

Principally, we must determine whether Torcolese's vehicle was considered an underinsured motor vehicle, enabling Doris to state a claim against Fidelity for underinsured motorist benefits.  In examining whether the vehicle was underinsured, we will review the underinsured motor vehicle provision of the Illinois Insurance Code (215 ILCS 5/143a-2(4) (West 1996)) and Fidelity's underinsured motor vehicle endorsement.  Section 143a-2(4) of the Illinois Insurance Code defines an underinsured motor vehicle as follows:

   "For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which 
the sum of the limits of liability under all bodily injury liability insurance policies
 or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, 
is less than the limits for underinsured coverage provided the insured
 as defined in the policy at the time of the accident.  The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less
 
those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.  However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured motorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle."  (Emphasis added.) 215 ILCS 5/143a-2(4) (West 1996). 

In construing a statutory provision, the primary goal is to ascertain and give effect to the legislature's intent.  
State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 540-41, 605 N.E.2d 539 (1992).  If the language of the statute is clear, it is unnecessary for the court to resort to other tools of statutory interpretation.  
Nottage v. Jeka
, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996).  The Illinois legislature enacted its provision for underinsured motorist coverage in order to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.  
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 555, 591 N.E.2d 427 (1992).  Section 143a-2 (215 ILCS 5/143a-2 (West 1996)) is designed to offer insurance to "fill the gap" between the claim and the tortfeasor's insurance.  
Sulser
, 147 Ill. 2d at 556.   The provision was intended to assure compensation for an insured's injuries in an amount equal to, but not exceeding, the limit of underinsured motorist coverage specified in the insured's policy.  
Koperski v. Amica Mutual Insurance Co.
, 287 Ill. App. 3d 494, 498, 678 N.E.2d 734 (1997).

We now turn to the pertinent provisions of the Fidelity insurance policy.  Fidelity’s underinsured motorist endorsement defines an underinsured motor vehicle as "a land motor vehicle or trailer of any type to which a 
bodily injury
 liability bond or policy applies at the time of the 
accident
 but its limit for 
bodily injury
 liability *** [h]as been reduced by payments to other p[e]rsons injured in the 
accident
 
to an amount less than the limit of liability for this coverage."  (Emphasis original.) 

The limit of liability provision of Fidelity's underinsured motorist endorsement provides:

   "Except in the event of a 
settlement agreement,
 the limit of liability shall be reduced by all sums paid because of the 
bodily injury
 by or on behalf of persons or organizations who may be legally responsible."  (Emphasis original.)

Where the facts are not contested, the construction of an insurance policy is a question of law, and a court of review may examine such policy 
de
 
novo
.  
Smith v. Allstate Insurance Co.
, 312 Ill. App. 3d 246, 251, 726 N.E.2d 1 (1999).  In construing insurance policies, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992).  A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993).  When the language of an insurance policy is clear and unambiguous, the court must construe the policy according to the plain and ordinary meaning of its provisions.  
Allstate Insurance Co. v. Gonzalez-Loya
, 226 Ill. App. 3d 446, 449, 589 N.E.2d 882 (1992).  Provisions that limit or exclude coverage will be interpreted liberally in favor of the insured.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997).  

Doris Merridew asserts that the term "other persons" in Fidelity's definition of an "underinsured motorist" does not exclude another covered person.  Doris Merridew further contends that the term "other persons" is not defined in the Fidelity policy and "[i]f Fidelity had intended that the reduction made in the definition of an 'underinsured motor vehicle' include amounts paid to any covered person by the tortfeasor's insurance, Fidelity should have included such language in the instant policy."  

"All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists."  
United States Fire Insurance Co. v. Schnackenberg
, 88 Ill. 2d 1, 5, 429 N.E.2d 1203 (1981).  The court must also not read an ambiguity into a policy just to find in favor of the insured.  See 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 530, 655 N.E.2d 842 (1995).  

Fidelity argues that the phrase in the subject policy
 is not ambiguous.  We agree.  The policy refers to "other p[e]rsons injured in the 
accident
."  (Emphasis original.)  No payments were made to "other persons injured in the 
accident
."  Torcolese's insurance carrier made payments to Doris Merridew for her derivative loss of consortium.  Doris Merridew was entitled to recover for loss of consortium because of the injury to her husband. 

Doris Merridew also contends that because Torcolese's policy limit ($500,000) less the amount that she received ($150,000) is less than the amount that Reginald Merridew would be entitled to receive under his underinsured motorist coverage with Fidelity ($500,000), Torcolese is an underinsured motorist with regard to the Merridew estate underinsured motorist claim.  Fidelity responds that Torcolese was not an underinsured motorist and that his insurer paid the Merridew estate an amount equal to the Fidelity insurance policy limits.

Though factually dissimilar, we find 
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474, 687 N.E.2d 1021 (1997), instructive.  In 
Cummins
, the plaintiff, Craig Cummins, was the passenger in a car insured by Country Mutual Insurance Company (Country Mutual) when the vehicle was involved in an accident.  At the time of the accident, Cummins was covered by the Country Mutual policy, which provided both uninsured and underinsured motorist benefits in the amount of $50,000 per person and $100,000 per accident.  The other motorist, who was at fault, had insurance with identical limits.  Cummins received $35,000 in a court-approved settlement from the at-fault driver's liability insurance company with the balance of the liability proceeds going to injured passengers in the at-fault driver’s vehicle.  
Cummins
, 178 Ill. 2d at 477.  He later filed suit against Country Mutual seeking the $15,000 difference between the $35,000 that he received as settlement from the at-fault driver’s liability insurance and the $50,000 limit of Country Mutual’s underinsured motorist coverage.  Country Mutual filed a motion to dismiss plaintiff's complaint contending that the liable driver's vehicle was not underinsured, as defined by the Illinois Insurance Code (215 ILCS 5/143 
et
 
seq
. (West 1992)), because the driver carried liability limits that were equal to the limits of plaintiff's underinsured motorist coverage.  
Cummins
, 178 Ill. 2d at 476.  The trial court granted defendant's motion to dismiss and plaintiff appealed.  The appellate court reversed, holding that plaintiff could state a claim for the underinsured motorist coverage provided by Country Mutual, and remanded for further proceedings.  
Cummins
, 178 Ill. 2d at 476. 

The issue before the Illinois Supreme Court was whether plaintiff could state a claim to recover the shortfall between his underinsured motorist policy limits and the amount he actually recovered from the liable driver's insurance, when the liable driver's policy had limits equal to plaintiff's underinsured motorist coverage, but the coverage was exhausted by payments to other injured claimants.  
Cummins
, 178 Ill. 2d at 476.  The Illinois Supreme Court, in a plurality opinion, affirmed the judgment of the appellate court, holding that the at-fault driver was underinsured and the plaintiff was entitled to underinsured motorist coverage.  
Cummins
, 178 Ill. 2d at 486.  The court reasoned that under the 
Sulser
 case, plaintiff needed $15,000 to "fill the gap" between his underinsured coverage limits and the amount of liability insurance actually recovered.  
Cummins
, 178 Ill. 2d at 486.  The at-fault driver's insurance company made payments to other persons injured in the accident. Two justices specially concurred in 
Cummins
 because they disagreed with the analysis by the plurality, but agreed that the vehicle of the at-fault driver should be considered an "underinsured motor vehicle" with respect to Cummins.  
Cummins
, 178 Ill. 2d at 492. In 
Cummins
, the court wrote:  "[M]otorists [are] considered 'underinsured' when the amount of liability insurance they actually pay out is less than the amount of underinsured-motorist coverage a policyholder obtains."  
Cummins
, 178 Ill. 2d at 485.  

Another instructive case is 
Gober v. State Farm Mutual Automobile Insurance Co.
, 263 Ill. App. 3d 846, 636 N.E.2d 1016 (1994).  In 
Gober
, Charles Gober was involved in a collision caused by Dean Galvin.  
Gober
, 263 Ill. App. 3d at 847.  In an action against Galvin, Charles sued for bodily injury and Helen sued for loss of consortium.  Galvin's insurer, Allstate Insurance Company (Allstate), settled Charles' claim for $10,000 and Helen's claim for $10,000.  Together the settlement amounts represented Galvin's total liability policy limit of $20,000.

Charles then made a claim for underinsured motorist benefits for his personal injuries under four different State Farm Insurance Company policies.  
Gober
, 263 Ill. App. 3d at 847.  All four polices contained underinsured motorist coverage limits in the amount of $100,000 per person and $300,000 per accident.  Charles sought $90,000 in benefits under the State Farm fire policy and an additional $20,000 of benefits under any one of the State Farm auto policies.  State Farm Fire paid Charles $80,000 under its policy, representing the difference between the single per-person limits of $100,000 and the $20,000 that Allstate paid to Charles and Helen.  The defendants denied Charles' additional claims.  Charles and Helen brought a declaratory judgment action seeking to recover additional underinsured motorist benefits under the State Farm insurance policies.  
Gober
, 263 Ill. App. 3d at 847.

The appellate court held that, "Since Allstate's payment to Helen was made as part of a larger, overall payment for the bodily injury caused to Charles, State Farm Fire properly reduced its benefit by the $10,000 paid to Helen in addition to the $10,000 paid to Charles."  
Gober
, 263 Ill. App. 3d at 850.  The court reasoned that "[t]he thrust of the policy language is to allow a setoff for any amount previously paid for bodily injury sustained by an insured at the hands of an underinsured motorist."  
Gober
, 263 Ill. App. 3d at 850.

Berutti v. State Farm Mutual Automobile Insurance Co.
, 288 Ill. App. 3d 997, 682 N.E.2d 216 (1997), is also an instructive case.  In 
Berutti
, Clifford Berutti was involved in a automobile accident.  He received the $100,000 per-person limit of the other driver's policy to cover his personal injuries.  Berutti's policy provided underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence.  He and his wife, Helga, sought a declaration that defendant was required to pay benefits for Helga's loss of consortium claim under their underinsured motorist coverage.  
Berutti
, 288 Ill. App. 3d at 998.  The trial court held that the policy did not provide separate coverage for Helga's loss of consortium claim.  
Berutti
, 288 Ill. App. 3d at 998.  

The appellate court affirmed, reasoning that, "Because plaintiffs do not claim that anyone other than Clifford Berutti was physically injured, these provisions unambiguously limit defendant's liability to the per-person limitation rather than the per-occurrence limitation."  
Berutti
, 288 Ill. App. 3d at 1001.  Further, "[b]ecause the per-person liability refers to one person injured, if the injured person receives the maximum per-person liability, the coverage is deemed exhausted."  
Berutti
, 288 Ill. App. 3d at 1002.

In the instant case, Torcolese was at fault in the accident with Reginald Merridew.  The Unitrin insurance policy issued to Torcolese contained a single liability limit of $500,000.  The insurance policy that Reginald and Doris Merridew carried with Fidelity included an underinsured motorist coverage endorsement with a $500,000 limit.  The limit of liability provision for underinsurance coverage in the Fidelity policy provides that the limit of liability shall be reduced by all sums paid because of bodily injury by persons legally responsible.  The insurance carrier for Torcolese, the person legally responsible for the accident and injury to Charles Merridew, paid $350,000 to Charles Merridew for his injury and $150,000 to Doris Merridew for loss of consortium because of the injury to Charles Merridew.  

In our view, the total $500,000 paid by Torcolese's insurance carrier was paid because of injuries to Charles Merridew and not because of injuries to other persons.  Accordingly, we hold that Torcolese was not an underinsured motorist and that his insurance carrier has paid the Merridew estate an amount equal to the Fidelity insurance policy limits.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

COHEN, P.J., and TULLY, JJ., concur.