FOUNDERS INSURANCE COMPANY, Plaintiff-Appellee, v. ALBERT L. MUÑOZ *et al.*, Defendants-Appellants.—FOUNDERS INSURANCE COMPANY, Plaintiff-Appellee, v. DANIEL VALLARTA *et al.*, Defendants-Appellants.—FOUNDERS INSURANCE COMPANY, Plaintiff-Appellee, v. YAROSLAV HONCHAR *et al.*, Defendants-Appellants.—SAFEWAY INSURANCE COMPANY, Plaintiff-Appellee, v. FLAVIO FERNANDEZ *et al.*, Defendants-Appellants.—FOUNDERS INSURANCE COMPANY, Plaintiff-Appellee, v. LAURA LEVAN, Special Adm'r of the Estate of Christine L. Seekamp, Deceased, *et al.*, Defendants-Appellants.—FOUNDERS INSURANCE COMPANY, Plaintiff-Appellee, v. RAFAEL TECPANECATL *et al.*, Defendants-Appellants.

First District (5th Division) Nos. 1—07—0792, 1—08—0208, 1—08—0415, 1—08—2042, 1—08—2059, 1—08—2283 cons.

Opinion filed March 27, 2009.—Rehearing denied April 30, 2009.

Peter C. Morse and Cynthia Ramirez, both of Morse & Bolduc, and Steven A. Drizin and Alison R. Flaum, both of Center on Wrongful Convictions, Bluhm Legal Clinic, of Northwestern University School of Law, both of Chicago, for appellants.

Shari Shelmadine, of Law Office of Shari Shelmadine, and Michael O'Halloran and Keely Hillison, both of Parrillo, Weiss & O'Halloran, both of Chicago, for appellees.

JUSTICE TOOMIN delivered the opinion of the court:

This consolidated appeal arises from declaratory judgment actions to enforce the provisions of automobile insurance policies which excluded coverage for the named insured and permissive drivers who did not have a reasonable belief they were entitled to use a motor vehicle. The complaints sought a declaration that plaintiffs had no duty to defend or indemnify defendants in six subrogation cases pending in the circuit court. Summary judgment was granted in favor of plaintiffs and defendants appeal asserting that the exclusion: (1) is ambiguous; (2) violates public policy created by the Illinois mandatory insurance law; and (3) usurps the legislative prerogative by contractually excluding liability coverage to drivers for violations of traffic laws. Additionally, in case No. 1—07—0792, defendants contend that the Founders' named driver exclusion cannot be enforced where the insurance card issued by Founders failed to contain the statutory warning that Alberto Muñoz was an excluded driver. For the following reasons, we affirm the judgment in No. 1—07—0792 and reverse and remand the remaining judgments for further proceedings consistent with this opinion.

## BACKGROUND

The following facts appear from plaintiffs' complaints and attachments, as well as from materials submitted by the parties in their cross-motions for summary judgment.

As noted, the common thread linking these consolidated appeals is found in the entitlement exclusion of Founders' and Safeway's automobile policies. The relevant language provides:

"Part I—LIABILITY

Exclusions. This policy does not apply under Part I:

[T]o bodily injury or property damage arising out of the use by any person of a vehicle without a reasonable belief that the person is entitled to do so[.]"

In the proceedings below, the drivers involved in the various accidents giving rise to various third-party claims did not have valid driver's licenses. As to each matter, the record provided the following basic information.

## A. Founders v. Alberto L. Muñoz (No. 1—07—0792)

Founders Insurance Company (Founders) insured a 1992 Buick Park Avenue under an automobile policy issued to Paulina Flores from September 19, 2004, to March 19, 2005. In the application signed by Flores on September 18, 2004, she listed "Alberto Muñuz" as a household member, but stated that he had never been licensed to drive. Accordingly, the policy excluded from coverage any "claim or suit which occurs as a result of any auto being operated by 'Alberto Muñuz.' " However, the insurance card issued to Ms. Flores did not contain a warning that Muñuz was excluded from coverage. A policy amendment on March 24, 2005, added "Alberto Muñoz" as a second driver, reflecting a current driver's license.[1]

On or about March 11, 2005, Alberto L. Muñoz was involved in an accident with Ewa R. Johnson in Des Plaines, Illinois. In turn, Allstate Insurance Company filed a subrogation lawsuit in the circuit court of Cook County entitled Allstate Insurance v. Muñoz, No. 05 M2 002135, for property damage to the Johnson vehicle and medical payments for her injuries in the amount of $9,373.87.

## B. Founders v. Daniel Vallarta (No. 1—08—0208)

Founders also insured a 1988 Pontiac Bonneville under a policy issued to Florencio Vallarta from November 27, 2004, to November 27, 2005. The policy contained the identical entitlement exclusion common to Founders automobile policies.

On or about December 13, 2004, Daniel Vallarta, the resident son of Florencio Vallarta, was operating the insured vehicle when he was involved in an accident with parked vehicles owned by Demetra Soter and Patricia Saifuddin in Chicago, Illinois. Daniel was unlicensed at the time of the accident.[2] Ms. Soter's insurance carrier, Allstate Insurance Company, filed a subrogation lawsuit in the circuit court of Cook County entitled Allstate Insurance v. Vallarta, No. 06 M1 21949, for property damage to the Soter vehicle in the amount of $3,612.55.

---

[1]The parties proceeded under the belief that Alberto Muñoz rather than Alberto Muñuz was the unlicensed driver excluded in the policy. Although this assumption may have been warranted, it is contrary to the recitals contained in the policy application and declarations. In any event, it was not germane to the court's ruling.

[2]Although Florencio later stated that Daniel had never been licensed to drive, the form completed by her when applying for coverage reflected that he had permission to drive the insured vehicle.

## C. Founders v. Yaroslav Honchar (No. 1—08—0415)

Founders likewise insured a 2000 Ford Windstar under an automobile policy issued to Mariya Poruchnyk and Yaroslav Honchar, from October 6, 2005, to April 6, 2006. The policy also contained the previously noted entitlement exclusion.

On or about November 25, 2005, Mr. Honchar was operating the insured vehicle in Chicago, Illinois, when he became involved in an accident with Bernard Riley. At the time of the accident, Honchar's license was suspended. Mr. Riley was operating a vehicle owned by Shirley Brown and insured under an automobile insurance policy issued by Allstate Insurance Company. In turn, Allstate sought subrogation in an action brought in the circuit court of Will County entitled Allstate Insurance Co. v. Honchar, No. 06 SC 6246, for the property damages sustained by the Brown vehicle in the amount of $9,902.07.

## D. Safeway v. Flavio Fernandez (No. 1—08—2042)

Safeway Insurance Company (Safeway) insured a 1996 GMC Sierra 1500 under a policy issued to Sergio Ramirez from November 9, 2006, to May 9, 2007. Safeway's policy included an entitlement exclusion identical to those contained in the Founders policies.

On or about November 13, 2006, while Flavio Fernandez was operating the insured vehicle, he was involved in an accident with Rolando Almaraz and Sandra Flores in Chicago, Illinois. Fernandez did not have a valid Illinois driver's license at the time. Rolando Almaraz was operating a vehicle owned by Pedro Almaraz and insured under an automobile insurance policy issued by Allstate Insurance Company. Flores was a passenger in the Almaraz vehicle when the accident occurred. Thereafter, Allstate filed a subrogation lawsuit in the circuit court of Cook County entitled Allstate Insurance Co. v. Fernandez, No. 07 M1 16142, for property damage and personal injuries sustained in the accident in the amount of $15,752.10.

## E. Founders v. Laura Levan (No. 1—08—2059)

Founders also insured a 1991 Chevrolet Geo Metro under an insurance policy issued to Christine L. Seekamp from March 1, 2004, to March 1, 2005. The policy contained the same entitlement exclusion common to Founders' automobile policies. On or about January 29, 2005, Ms. Seekamp was involved in an automobile accident with David Schlesinger in Chicago, Illinois. She was cited for driving on a suspended driver's license at the time of the accident. Schlesinger was operating his own vehicle, which was insured by Allstate Property & Casualty Insurance Company. Allstate subsequently filed a subrogation lawsuit in the circuit court of Cook County entitled Allstate Insur-

ance Co. v. Seekamp, No. 06 M1 13868, for property damages and personal injuries sustained in the January 29, 2005, accident.[3]

### F. Founders v. Rafael Tecpanecatl (No. 1—08—2283)

Founders likewise insured a 1999 Ford Explorer under an automobile policy issued to Rafael Tecpanecatl from May 18, 2006, to November 18, 2006. The policy contained the identical entitlement exclusion common to the other Founders' automobile policies.

On or about October 27, 2006, Mr. Tecpanecatl was operating the insured vehicle when he was involved in an automobile accident with Mike M. Marusic, Heather M. Burns and Kara Campos in Elmhurst, Illinois. Tecpanecatl had never been licensed to drive. Mr. Marusic was operating a vehicle insured under an automobile liability policy issued by Allstate Insurance Company. Ms. Burns was a passenger in the Marusic vehicle. Ms. Campos was operating another vehicle owned by Vickie Ritter and also insured under an automobile liability policy issued by Allstate Insurance Company. Allstate filed a subrogation lawsuit in the circuit court of Cook County entitled Allstate Insurance Co. v. Tecpanecatl, No. 07 L 4498, for the property damage and personal injuries arising from the October 27, 2006, accident.

### G. Proceedings in the Circuit Court

Instead of providing a defense in the various cases, Founders and Safeway commenced the underlying actions seeking declarations that they had no duty to defend or indemnify their named insureds or permissive drivers. As noted, the insurers' actions were premised upon the averment that none of the drivers had a reasonable belief that they were entitled to drive the insured vehicles under the policies because they did not have valid driver's licenses at the time of the accident.

On cross-motions for summary judgment in each action, the trial court denied defendants' motions and entered judgment for the insurers, finding that because none of the drivers possessed a reasonable belief that they were entitled to drive at the time of the accidents, neither Founders nor Safeway owed any duty to defend or indemnify the named insureds or such drivers.

### ANALYSIS

We now consider defendants' argument that the circuit court erred in entering summary judgment on plaintiffs' complaints for declaratory judgment. Because the propriety of an order granting summary

---

[3]Ms. Seekamp passed away during the pendency of the trial court proceedings, and Laura Levan was appointed as special administrator in her stead.

judgment is a question of law, the cornerstone of our review is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

It is well settled that a grant of summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits confirm that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2006). Although summary judgment is encouraged as an aid to expeditious disposal of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 1057, 728 N.E.2d 726, 731 (2000). In considering whether summary judgment is appropriate, our precedent instructs that courts should construe the facts most strictly against the moving party and in the light most favorable to the opponent. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186, 766 N.E.2d 1118, 1123 (2002). A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736, 740 (1993).

### A. Ambiguity of the Entitlement Exclusion

When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). Because the court must assume that every provision was intended to serve a purpose, an insurance policy is to be construed as a whole, giving effect to every provision (*Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371, 875 N.E.2d 1082, 1090 (2007); *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004)), and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract (*American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997); *Outboard Marine*, 154 Ill. 2d at 108, 607 N.E.2d at 1212).

If the provisions of the policy are clear and unambiguous, a court must afford them their plain, ordinary, and popular meaning (*Outboard Marine*, 154 Ill. 2d at 108, 607 N.E.2d at 1212), and the policy will be applied as written, unless it contravenes public policy (*Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564). All of the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists. *United*

*States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205 (1981).

A policy provision is ambiguous only if it is subject to more than one reasonable interpretation (*Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 530, 655 N.E.2d 842, 846 (1995)), or obscure in meaning through indefiniteness of expression (*Installco, Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 783, 784 N.E.2d 312, 319 (2002)). Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 141, 708 N.E.2d 1122, 1130 (1999); *Outboard Marine*, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212-13. Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75 (whether pollution exclusion bars coverage for claims of carbon monoxide poisoning caused by an allegedly defective furnace); *Outboard Marine*, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212-13 (whether coverage for suits seeking damages includes equitable or injunctive relief as well as actions at law).

Thus, exclusionary provisions are upheld only where the terms are clear, definite and explicit. *State Farm Mutual Automobile Insurance Co. v. Schmitt*, 94 Ill. App. 3d 1062, 1064, 419 N.E.2d 601, 602 (1981). In *Smith v. Allstate Insurance Co.*, 312 Ill. App. 3d 246, 254, 726 N.E.2d 1, 7 (2000), the court articulated the underlying rationale for this rule of construction. First, the insured's intent in purchasing an insurance policy is to obtain coverage and therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent. Second, the insurer is the drafter of the policy and could have drafted the ambiguous provision clearly and specifically.

With these rules of construction in mind, we address the key provision pertinent to this aspect of the instant appeal. The relevant language of what defendants denominate the "entitlement exclusion" common to each of the Founders and Safeway policies excludes coverage for "bodily injury and property damage arising out of the use of a vehicle without a reasonable belief that the person is entitled to do so." Defendants posit that because the exclusion is ambiguous, it is axiomatic that the exclusion must be interpreted in a light most favorable to the insureds and against the insurers which drafted the policies. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75.

In *Hartford Insurance Co. of Illinois v. Jackson*, 206 Ill. App. 3d 465, 564 N.E.2d 906 (1990), identical language was included among a litany of other exclusions. Some exclusions referred to "family members," while others simply excluded "any person" from liability

coverage. In *Jackson*, as here, the entitlement exclusion referred to "any person." In interpreting the policy the court reasoned that when read as a whole, the policy implied that coverage for a "family member" was barred only by those exclusions which referenced that language. Finding the interchange of those terms ambiguous, the *Jackson* court interpreted the policy and, specifically, the entitlement exclusion in favor of coverage, thereby obligating Hartford to defend and indemnify its insured:

> "[W]here a policy creates two distinct classes, namely, 'family member' and 'any person,' and where several exclusions specifically include 'family member' but the exclusion under scrutiny does not, then, at the very least, it is ambiguous as to whether a 'family member' is barred from coverage under said exclusion." *Jackson*, 206 Ill. App. 3d at 476, 564 N.E.2d at 912.

*Jackson* adopted the rationale of *Economy Fire & Casualty Co. v. Kubik*, 142 Ill. App. 3d 906, 492 N.E.2d 504 (1986), which interpreted similar policy language. The *Kubik* court likewise reasoned that because Economy had placed "family member" in some exclusions while omitting it from others, the court was compelled to read the entitlement exclusion literally and found that it did not apply to a "family member." *Kubik*, 142 Ill. App. 3d at 911, 492 N.E.2d at 508. As in *Jackson*, the ambiguity was construed in a light most favorable to the insured, thereby requiring Economy to defend and indemnify the insured's 14-year-old unlicensed daughter who was driving the insured vehicle at the time of a fatal accident. *Kubik*, 142 Ill. App. 3d at 911, 492 N.E.2d at 505.

Founders asserts that because its policies do not interchange defined terms such as "family members" and "any persons," defendants' reliance upon *Jackson* and *Kubik* is misplaced. Founders maintains that its policies do not draw the distinction perceived in the Hartford and Economy policies; rather, a simple reading of the Founders policies demonstrates that "any person" means "any person" and includes the insured and permissive drivers alike. However, we are not persuaded that the underlying rationale of *Jackson* and *Kubik* should be summarily rejected. Although the policies at issue do not designate "family members" as a different class of individuals, as in *Jackson* and *Kubik*, coverage nonetheless is excluded in certain instances for two distinct classes, the "insured" or "named insured" and "any person." Accordingly, we find some merit in defendants' argument that the entitlement exclusion at issue here may well be plagued with the same ambiguity found in *Jackson* and *Kubik*.

Defendants submit that the instant appeals present cases of first impression before this court. We likewise find a dearth of reported decisions wherein Illinois courts have had occasion to interpret the entitlement exclusion in the precise manner suggested by defendants. We discern defendants' argument to be narrowly drawn, focusing upon the ambiguity perceived in the use of "entitled" within the exclusion. Although the *Jackson* and *Kubik* courts indeed construed the exclusion, those decisions did not address the meaning of "entitled" but, rather, the construction placed upon "any person" in relation to other categories of insured individuals.

Plaintiffs, however, rely upon two cases that have upheld the exclusion, *Economy Fire & Casualty Co. v. State Farm Mutual Insurance Co.*, 153 Ill. App. 3d 378, 505 N.E.2d 1334 (1987), and *Century National Insurance Co. v. Tracy*, 339 Ill. App. 3d 173, 789 N.E.2d 833 (2003). Both were decided by the Second District and are clearly distinguished from the factual scenarios at bar. In *Economy*, there were multiple grounds for excluding coverage, including the driver's transfer of title to his girlfriend to obtain valid plates following the suspension of his license, his intoxication on the night of the accident, and the forcible taking of the car keys from his girlfriend before driving away. Additionally, in affirming denial of coverage the *Economy* court focused on the "reasonable belief" of the driver, rather than the "entitled" aspect of the exclusion:

> "Economy has not raised the issue, and we need not decide, whether 'entitled' to use the car means the legal authority to drive a car so that Barton is thereby precluded from coverage on the sole fact that his driver's license was suspended." *Economy*, 153 Ill. App. 3d at 383, 505 N.E.2d at 1337.

The factual scenario in *Tracy* is likewise distinguished from the cases before this court. As in *Economy*, when applying for insurance coverage *Tracy* acknowledged his license was suspended and was informed that he would not be covered by the policy. The suspension covered a 14-year period and was in force when defendant was involved in the accident. Significantly, in upholding the policy exclusion, the *Tracy* court recognized that no Illinois court had decided whether the absence of a driver's license in and of itself would suffice to uphold application of the exclusion. Although the court validated the exclusion, as in *Economy*, the focus of the court's interpretation was not upon whether the defendant was "entitled" to drive, but rather whether he "reasonably believed" that he could use the vehicle. *Tracy*, 339 Ill. App. 3d at 176, 789 N.E.2d at 836.

The two federal district court cases offered by plaintiffs, *Grinnell Select Insurance Co. v. Glodo*, No. 05—4178—JLF (S.D. Ill. September

12, 2006), and *Cincinnati Insurance Co. v. Uhring*, No. 05—CV— 0603—DRH (S.D. Ill. December 20, 2006), likewise rely upon *Tracy*. Although both cases validated the entitlement exclusion at issue, the holdings did not construe the import of being "entitled" in interpreting the provision. As such, the cases offer little guidance in meeting the collective arguments of defendants.

Although the *Tracy* court was cognizant of decisions from courts in other jurisdictions interpreting this same policy exclusion, the court gleaned little guidance from those decisions:

> "Several courts in other jurisdictions have interpreted this same policy exclusion. In most of these cases, however, there were other factors at issue besides the lack of a driver's license. See, *e.g., General Accident Fire & Life Assurance Corp. v. Perry*, 75 Md. App. 503, 525-26, 541 A.2d 1340, 1351 (1988) (no license, no permission, previous arrests for driving without a license); *Craig v. Barnes*, 710 A.2d 258, 260 (Me. 1998) (no license, no permission); *Omaha Property & Casualty Insurance Co. v. Johnson*, 866 S.W.2d 539, 540 (Tenn. App. 1993) (no license, no permission). In the few cases where the only relevant factor was the absence of a driver's license, courts have gone both ways. Compare *Huggins v. Bohman*, 228 Mich. App. 84, 89, 578 N.W.2d 326, 329 (1998) ("Without a driver[']s license [defendant] could not reasonably believe that she had met all of the requirements necessary to entitle her to drive [the automobile]"), with *Blount v. Kennard*, 82 Ohio App. 3d 613, 617, 612 N.E.2d 1268, 1271 (1992) (a driver can have a reasonable belief without a valid license)." *Tracy*, 339 Ill. App. 3d at 176, 789 N.E.2d at 835-36.

Plaintiffs boldly claim that the entitlement exclusion at issue here "unambiguously encompasses unlicensed drivers." In essence, plaintiffs posit that the only correct interpretation of the language they have employed connotes a legal meaning; as a matter of law one who does not have a valid driver's license "cannot be legally entitled" to drive an automobile. That interpretation, to be sure, does have a clear and definite meaning. Had Founders and Safeway intended to exclude coverage for unlicensed drivers, they could easily have done so in clear and explicit terms. See 7A Couch on Insurance 3d §110:49, at 110—64—65 (1998).[4] Yet, the exclusion at issue here does not speak to being "legally entitled" or "having a valid driver's license," but rather

---

[4] Indeed, the record reflects that Safeway's policy included such an exclusion at the time it commenced this proceeding. The policy attached to Safeway's complaint for declaratory judgment contains both the entitlement exclusion at issue here as well as an unlicensed driver exclusion which was later abrogated.

simply being "entitled." Additionally, neither policy provides any indication or insight as to the meaning of "entitled."

Moreover, the touchstone for judging whether a term is ambiguous depends not on how the legally trained mind interprets the word, but on how the ordinary person understands it. *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill. App. 3d 378, 391, 535 N.E.2d 1071, 1080 (1989). Such terms, defendants argue, are to be given their ordinary and popular meaning. Problematic here, and due perhaps to the ambiguity inherent in the very word "entitled," resort to extrinsic dictionary definitions may be unavailing. As defined by Webster's, "entitle" means "to give a right or legal title to : qualify (one) for something : furnish with proper grounds for seeking or claiming something." Webster's Third New International Dictionary 758 (1993). Likewise, commonly recognized synonyms include, to designate, empower, or enable. Webster's Revised Unabridged Dictionary 497 (1913). "Entitle" could also connote other situations such as being "authorized," "permitted" or "directed."

Putting dictionary definitions aside, in the absence of Illinois decisions addressing this issue, resort to the holdings of courts in sister states are instructive. For example, we find helpful the analysis of the Court of Appeals of Washington in *Safeco Insurance of America v. Davis*:

> "Several reasonable interpretations of 'entitled' are possible within the scope of the exclusionary language. One is 'permission' or 'consent,' which focuses on the relationship between the driver and the owner of the vehicle. Another equally plausible interpretation of 'entitled,' apparently that urged by Safeco, is 'legal authority,' which focuses on a variety of relationships that arise between the driver and the [s]tate." *Safeco Insurance Co. of America v. Davis*, 44 Wash. App. 161, 165, 721 P.2d 550, 552 (1986).

In *Hurst v. Grange Mutual Casualty Co.*, 266 Ga. 712, 470 S.E.2d 659 (1996), the construction of the same entitlement exclusion *sub judice* was before the court. In *Hurst*, as here, the insurance contract did not contain a definition of the word "entitled." The Georgia Supreme Court reasoned that the exclusion was susceptible of three logical and reasonable interpretations:

> "[T]hat the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; that the user must have the consent of the owner or apparent owner in order to reasonably believe he is entitled to use the vehicle; or, that the user must have both consent and legal authorization in order to be entitled to use the vehicle. The number of reasonable and logical interpretations makes the clause ambiguous." *Hurst*, 266 Ga. at 716, 470 S.E.2d at 663.

An identical result obtained in *Farm & City Insurance Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995), where in employing the same analysis the Iowa Supreme Court found the term "entitled" in the policy exclusion to be ambiguous. Adopting the interpretation most favorable to the insured, the court limited the exclusion to situations where permissive use of the vehicle was lacking. See also *Canadian Indemnity Co. v. Heflin*, 151 Ariz. 257, 259, 727 P.2d 35, 37 (App. 1986) (exclusion clearly ambiguous as shown by the divergent interpretations given to it by the parties and the trial court); *State Automobile Mutual Insurance Co. v. Ellis*, 700 S.W.2d 801, 802 (Ky. App. 1985) (policy ambiguous in failing to specify whether "entitled" means obtaining permission from the owner or whether a valid driver's license is also required); *Aetna Casualty & Surety Co. v. Nationwide Mutual Insurance Co.*, 326 N.C. 771, 776, 392 S.E.2d 377, 380 (1990) (a person knowingly driving a vehicle without a driver's license may nevertheless have a reasonable belief that he was entitled to use the vehicle); *Blount v. Kennard*, 82 Ohio App. 3d 613, 616-17, 612 N.E.2d 1268, 1271 (1992) (test is not whether he reasonably believed he was licensed to drive, but whether he reasonably believed he was authorized to drive); *State Farm Mutual Automobile Insurance Co. v. Moore*, 375 Pa. Super. 470, 476-77, 544 A.2d 1017, 1020 (1988) ("entitlement" consists of permission of the owner or lawful possessor).

We are likewise mindful that in construing the same exclusion other courts have found no ambiguity. Thus, in *Safeway Insurance Co. v. Jones*, 202 Ga. App. 482, 483, 415 S.E.2d 19, 20 (1992), the court determined that an unlicensed driver could not have reasonably believed that he was entitled to drive any vehicle, regardless of whether he had permission to do so. See also *Huggins v. Bohman*, 228 Mich. App. 84, 89, 578 N.W.2d 326, 329 (1998) (rational minds would agree that an underage, unlicensed, inexperienced driver was not "entitled" to drive the automobile); *Omaha Property & Casualty Insurance Co. v. Johnson*, 866 S.W.2d 539, 540-41 (Tenn. App. 1993) (unreasonable for 16-year-old unlicensed driver who took the truck out after his parents were asleep to believe that he was entitled to drive the truck).

■ Returning to the Founders and Safeway policies, we discern that notwithstanding their inherent inconsistency, each of the interpretations offered by the parties is a reasonable one. Precisely because the exclusion is susceptible of two reasonable interpretations we find it to be ambiguous. Under the prevailing guideposts of construction we are not at liberty to choose which interpretation to follow. *Employers Insurance of Wausau*, 186 Ill. 2d at 141, 708 N.E.2d

at 1130. Plaintiffs undeniably created the ambiguity and we are therefore constrained to interpret the policy and specifically the entitlement exclusion in a light most favorable to defendants. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75. Accordingly, we find that although coverage is excluded for persons using the insured vehicle without a reasonable belief that he or she was a permissive driver, the exclusion does not necessarily encompass unlicensed drivers. Therefore, summary judgment was not appropriate on this issue.

### B. Named Driver Exclusion

■ Last, we address defendants' argument, limited solely to case No. 1—07—0792, that the named driver exclusion of Alberto L. Muñoz cannot be enforced because the insurance card issued by Founders failed to disclose that Mr. Muñoz was an excluded driver. Defendant's argument is premised on section 7—602 of the Illinois mandatory insurance law, which describes the requirements for insurance cards and provides in relevant part:

> "If the insurance policy represented by the insurance card does not cover any driver operating the motor vehicle with the owner's permission, or the owner when operating a motor vehicle other than the vehicle for which the policy is issued, the insurance card shall contain a warning of such limitations in the coverage provided by the policy." 625 ILCS 5/7—602 (West 2004).

Additionally, the administrative regulations promulgated by the Secretary of State mandate that insurance cards contain the excluded driver warning. Title 50, section 8010.20(d)(7), of the Illinois Administrative Code provides:

> "(d) The insurance card shall contain the following insurance information:

> * * *

> (7) a warning of excluded drivers or vehicles, when applicable." 50 Ill. Adm. Code §8010.20(d)(7), amended at 15 Ill. Reg. 15605, eff. October 15, 1991.

In *St. Paul Fire & Marine Insurance Co. v. Smith*, 337 Ill. App. 3d 1054, 1060, 787 N.E.2d 852, 857 (2003), we concluded that the plain language of the statute, coupled with the administrative regulations, expressly evinced the legislature's intent to carve out a narrow public policy exception for named driver exclusions. Although *St. Paul Fire & Marine* indeed validated this exclusion, the opinion does not address the consequences mandated for an insurer's failure to include correct information in the insurance card.

Nonetheless, defendants boldly state that the provision excluding Mr. Muñoz from coverage cannot be enforced in the absence of the

warning required by law. Defendants have not enlightened us with any authority, statutory or otherwise, in support of this novel interpretation, nor have we located any. Accordingly, we find no statutory impediment to enforcement of Founders' named driver exclusion in 1—07—0792 excluding Alberto Muñoz from coverage in the accident of March 11, 2005. Inasmuch as the policy provision provides an additional and separate contractual basis absolving Founders of any duty to defend or indemnify Mr. Muñoz, we affirm the grant of summary judgment in this case.

## CONCLUSION

Our determination that the entitlement exclusion common to plaintiffs' policies is ambiguous obviates the need to address defendants' remaining concerns. For the foregoing reasons, we affirm the judgment of the circuit court in case No. 1—07—0792 and reverse the grant of summary judgment in each of the remaining consolidated cases and remand the matters for further proceedings consistent with this opinion.

Judgment affirmed in No. 1—07—0792 and the remaining judgments reversed and remanded.

FITZGERALD SMITH, P.J., with O'MARA FROSSARD, J., concur.