Docket Nos. 108605, 108612 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

———————————

FOUNDERS INSURANCE COMPANY, Appellant, v. ALBERT L. MUNOZ *et al.*, Appellees.–SAFEWAY INSURANCE COMPANY, Appellant, v. FLAVIO FERNANDEZ *et al.*, Appellees.

*Opinion filed May 20, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

In these consolidated appeals, we consider the validity of an automobile policy exclusion that precludes liability coverage when the person using the vehicle does not have a "reasonable belief" that he or she is "entitled" to do so. In each of the six underlying cases, the trial court ruled that the coverage exclusion was applicable to a driver who did not have a valid license. The appellate court, however, held that the coverage exclusion is ambiguous, and reversed the trial court's no-coverage ruling in five of the six cases. 389 Ill. App. 3d 744, 757 (2009). The appellate court affirmed the trial court's no-coverage ruling in the sixth case, but on different grounds. 389 Ill. App. 3d at

756-57.

For the reasons set forth below, we hold that the policy exclusion precludes liability coverage in each of the six cases, and affirm in part and reverse in part the judgment of the appellate court.

BACKGROUND

The present litigation arises out of six automobile accidents. Five of the accidents implicate coverage under uniform automobile policies issued by Founders Insurance Company. The sixth accident implicates coverage under an automobile policy issued by Safeway Insurance Company. We examine first the Founders policy and the five associated accidents.

Founders Cases

Part I of the Founders automobile policy details the liability coverage, stating in relevant part that Founders agrees:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, because of:
>
> A. bodily injury,
>
> or
>
> B. property damage
>
> arising out of the operation, maintenance or use of the owned automobile or any non-owned automobile and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy ***."

"Persons insured," for purposes of Part I liability coverage with respect to an owned automobile, include "the named insured" and "any other person using such automobile with the permission of the named insured, provided the actual use thereof is within the scope of such permission."[1]

---

[1]Insurance clauses, like this one, which extend coverage to permissive users are typically referred to as "omnibus clauses." *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d

The Founders policy also contains several exclusions to Part I liability coverage. Relevant here is exclusion (p) under which Part I coverage does not apply "to bodily injury or property damage arising out of the use by any person of a vehicle without a reasonable belief that the person is entitled to do so."

Five of the underlying automobile accidents involved vehicles insured through Founders and driven by either the named insured, or a permissive user of the insured vehicle. At the time of the accidents, none of the five drivers had a valid license, *i.e.*, either the driver never obtained a license or the license was suspended. Each of these five accidents also involved a vehicle insured through Allstate Insurance Company, which made payments to its insureds for bodily injury and/or property damage resulting from the accidents. Thereafter, Allstate, as subrogee of its insureds, filed a complaint against each of the persons driving a vehicle insured through Founders seeking to recoup the monies Allstate paid to its insureds.

In response to each of Allstate's subrogation actions, Founders filed a complaint for declaratory judgment in the Cook County circuit court, naming as defendants Founders' own insured, the driver of the vehicle if the driver was not the named insured, and Allstate, as subrogee of its insureds.[2] In each complaint, Founders sought a declaration that it owes no duty to defend or indemnify its named insured or the driver in connection with the Allstate lawsuit, and that Allstate is not entitled to recover any monies under the Founders policy. Founders maintained that under exclusion (p), because the driver did not have a valid license at the time of the accident, he could not have had a "reasonable belief" that he was "entitled" to drive the vehicle.

In each case, the parties filed cross-motions for summary

121, 128 (2005).

[2]The five declaratory judgment actions, all in the circuit court of Cook County, are: Founders Insurance Co. v. Munoz, No. 05–CH–21653; Founders Insurance Co. v. LeVan, No. 06–CH–6573; Founders Insurance Co. v. Honchar, No. 07–CH–5104; Founders Insurance Co. v. Vallarta, No. 07–CH–5400; and Founders Insurance Co. v. Tecpanecatl, No. 07–CH–17596.

judgment. Allstate argued that the reasonable-belief exclusion violates public policy as expressed by Illinois' mandatory insurance statute, and is an improper attempt by Founders to penalize its insureds for conduct (driving without a valid license) that the legislature has already penalized. Allstate also argued that the exclusion is ambiguous and must be construed in favor of coverage. In response, Founders argued that the reasonable-belief exclusion unambiguously applies to unlicensed drivers, and that an insurer may limit its risks without violating Illinois' mandatory insurance statute.

In each of the five cases, the trial court granted Founders' motion for summary judgment and denied Allstate's motion for summary judgment. The trial court found that because the driver did not possess a valid license, he did not have a reasonable belief that he was entitled to drive the vehicle. Allstate appealed the trial court's ruling in each case.

Safeway Case

The sixth underlying automobile accident implicates coverage under a Safeway policy very similar to the Founders policy. Part I of the Safeway policy provides liability coverage for bodily injury or property damage, and defines "persons insured," with respect to the owned automobile, as "the named insured" or "any other person using the owned automobile to whom the named insured has given permission, provided the use is within the scope of such permission." The Safeway policy also contains several coverage exclusions. Relevant here is exclusion (o), under which Part I liability coverage does not apply to "any person operating an automobile without a reasonable belief that he or she is entitled to do so."

The accident at issue involved two vehicles, one of which was insured through Safeway and driven by a permissive user whose license was suspended. The other vehicle involved in the accident was insured through Allstate. After Allstate made payments to its insured for property damage and bodily injury resulting from the accident, Allstate filed a subrogation action against the driver of the vehicle insured through Safeway. In response, Safeway filed a complaint for declaratory judgment in the Cook County circuit court against its insured, the driver of the vehicle insured through Safeway, and

Allstate, as subrogee of its insureds.[3] Safeway sought a declaration that, pursuant to exclusion (o), because the driver did not have a valid license at the time of the accident, Safeway is not obligated to defend or indemnify the driver in connection with the Allstate lawsuit.

Safeway and Allstate filed cross-motions for summary judgment making essentially the same arguments that Founders and Allstate raised in the other five cases. The trial court granted Safeway's motion and denied Allstate's motion. Allstate appealed.

Appellate Review

The six cases were consolidated for review in the appellate court.[4] The appellate court held that the coverage exclusion in the Founders and Safeway policies was ambiguous because the word "entitled" could reasonably refer to permission or consent, or to legal authority, *i.e.*, licensure. 389 Ill. App. 3d at 755. Because Founders and Safeway, as drafters of the policies, created the ambiguity, the appellate court construed the exclusion against the insurers and in favor of coverage. 389 Ill. App. 3d at 756. The appellate court concluded: "[A]lthough coverage is excluded for persons using the insured vehicle without a reasonable belief that he or she was a permissive driver, the exclusion does not necessarily encompass unlicensed drivers." 389 Ill. App. 3d at 756. With the exception of the Munoz case, the appellate court reversed the grant of summary judgment in each case. 389 Ill. App. 3d at 757. As to the Munoz case, the appellate court affirmed the trial court's grant of summary judgment in favor of Founders, relying on the named-driver exclusion in the policy which expressly precludes coverage for any claim or suit

---

[3]The declaratory judgment action was captioned Safeway Insurance Co. v. Fernandez, 07–CH–24429.

[4]The cases proceeded in the appellate court as: Founders Insurance Co. v. Munoz, No. 1–07–0792, consolidated with Founders Insurance Co. v. Vallarta, No. 1-08–0208; Founders Insurance Co. v. Honchar, No. 1–08–0415; Safeway Insurance Co. v. Fernandez, No. 1–08–2042; Founders Insurance Co. v. LeVan, No. 1–08–2059; and Founders Insurance Co. v. Tecpanecatl, No. 1–08–2283.

arising out of the operation of any automobile by Munoz. 389 Ill. App. 3d at 757.

Founders and Safeway each filed a petition for leave to appeal (Nos. 108605 and 108612, respectively), which we allowed (210 Ill. 2d R. 315) and consolidated for review. Allstate has requested cross-relief in the Munoz case. See 155 Ill. 2d R. 318(a). We also allowed the Illinois Trial Lawyers Association to file a brief *amicus curiae*. See 210 Ill. 2d R. 345.


ANALYSIS

The parties to these six cases chose to litigate Founders' and Safeway's declaratory judgment actions by means of cross-motions for summary judgment. By doing so, they agree that no factual issues exist and that the disposition of these cases turns only on our resolution of purely legal issues. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d. 266, 285 (2009). Accordingly, our review proceeds *de novo*. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993). The legal issues presented are: (1) whether the coverage exclusion unambiguously applies to drivers without a valid license and, if so, (2) whether such an exclusion contravenes Illinois public policy.

Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416 (2006); *Hobbs*, 214 Ill. 2d at 17. Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Hobbs*, 214 Ill. 2d at 17; *Crum & Forster*, 156 Ill. 2d at 391. If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. *Nicor*, 223 Ill. 2d at 416-17; *Hobbs*, 214 Ill. 2d at 17. The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 372 (2007); *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 424 (1980). A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. *Rich*, 226 Ill. 2d at 372. Rather,

an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. *Hobbs*, 214 Ill. 2d at 17; *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 530 (1995). While we will not strain to find an ambiguity where none exists (*Hobbs*, 214 Ill. 2d at 17), neither will we adopt an interpretation which rests on "gossamer distinctions" that the average person, for whom the policy is written, cannot be expected to understand (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 334 (1952)). When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose. Thus, an insurance policy must be considered as a whole; all of the provisions, rather than an isolated part, should be examined to determine whether an ambiguity exists. *Rich*, 226 Ill. 2d at 371; *Crum & Forster*, 156 Ill. 2d at 391.

The policy provision at issue here precludes liability coverage when the person using or operating the vehicle does not have a "reasonable belief" that he or she is "entitled" to do so. Based on this language, Founders and Safeway argue that a person who has not been issued a driver's license, or whose license has been suspended or revoked, cannot have a reasonable belief that he or she is entitled to drive merely because he or she owns the vehicle or was granted permission to use the vehicle, and that under *Century National Insurance Co. v. Tracy*, 339 Ill. App. 3d 173 (2003), this policy exclusion has an established legal meaning in this state. Founders and Safeway further argue that when the policies are read as a whole, the coverage exclusion does not encompass a reasonable belief that the person is a permissive driver because the exclusion does not apply unless the driver is already a permissive user or a named insured.

Allstate responds that the term "entitled," as used in the coverage exclusion, can only reasonably refer to entitlement based on ownership of the vehicle or permission from the owner. Allstate explains: "If the operator is the owner, he obviously has a reasonable belief that he is entitled to use his or her property, regardless of whether the owner has a legal right to drive the vehicle on the public roadways. Similarly, if the owner gives an operator permission to use his vehicle, the operator would have a reasonable belief he is entitled to use the vehicle." Allstate argues in the alternative that even if such

interpretation is not the only reasonable one, it is at least *a* reasonable interpretation of an ambiguous policy provision.

Allstate further responds that the exclusion does not have an established legal meaning in Illinois or in our sister states. According to Allstate, 16 states have found the exclusion refers to permission from the owner; 7 states have found the exclusion ambiguous; and 7 states have found that permission is one of several factors to consider when determining whether the coverage exclusion applies.

As a preliminary matter, we note that we have reviewed the out-of-state cases Allstate cites, but we do not find them particularly helpful to our analysis. Many of the cases quote only the coverage exclusion and are unclear as to whether the policy also contained an omnibus clause like the one contained in the Founders and Safeway policies. Also, we do not necessarily agree with Allstate's characterization of the legal significance of the cases it cites. For example, Allstate cites *Mikelson v. United Services Automobile Ass'n*, 107 Haw. 192, 111 P.3d 601 (2005), for the proposition that Hawaii has found the reasonable-belief exclusion ambiguous. In fact, the Hawaii Supreme Court "express[ed] no opinion as to whether such an exclusion is ambiguous or not ambiguous," concluding that the defendant failed to present argument as to one of the two bases on which the trial court found the exclusion inapplicable and thus waived the point on appeal. *Mikelson*, 107 Haw. at 209 n.17, 111 P.3d at 618 n.17. Allstate also cites *Maryland Casualty Co. v. Rynearson*, No. 87C–SE–33–1–CV (Del. Super. Ct. August 18, 1989) (mem. op.), *Ohio Casualty Insurance Co. v. Safeco Insurance Co.*, 768 S.W.2d 602 (Mo. App. 1989), *Dairyland Insurance Co. v. General Accident Insurance Co.*, 435 So. 2d 1263 (Ala. 1983), and *Bowlus School Supply, Inc. v. Swartz*, 766 P.2d 204 (Kan. App. 1988), for the proposition that Delaware, Missouri, Alabama and Kansas have all found that the reasonable-belief exclusion refers to permission from the owner. Though Allstate is correct that these courts only considered whether the person using the vehicle had permission to do so, the courts' recitation of the facts did not indicate that the drivers lacked valid licenses. The issue we address in the present appeal was not raised in these cases. Allstate further cites *Lobeck v. State Farm Mutual Automobile Insurance Co.*, 582 N.W.2d 246 (Minn. 1998), for the proposition that Minnesota, too, has held that the reasonable-

belief exclusion refers to permission. *Lobeck*, however, did not involve an unlicensed driver or a reasonable-belief exclusion; it involved a licensed driver and a policy exclusion for liability arising out of the use of any vehicle "if that use is without permission." *Lobeck*, 582 N.W.2d at 249.

Rather than engaging in a detailed discussion of out-of-state cases of limited and questionable applicability, we will conduct our own review of the policy language, applying the rules of contract construction set forth above. We begin with the language of the policy and, in particular, the word "entitled."

Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006). The word "entitle" means:

> "to give a right or legal title to: qualify (one) for something: furnish with proper grounds for seeking or claiming something <his age [entitle]s him to a pension> <you are *entitled* to your opinion> <the work [entitle]s him to a place among the great novelists>." Webster's Third New International Dictionary 758 (1993).

Under this popular definition, the word "entitle," depending on usage, could connote entitlement based on permission or ownership, as Allstate argues. See 389 Ill. App. 3d at 754 (observing that the term "entitle" could connote being authorized, permitted or directed). We are not concerned, however, with possible connotations, but only that connotation which arises out of the term's use in the Founders and Safeway policies. Each policy, when considered as a whole, does not support the connotation urged by Allstate.

Under both policies, an "insured person" includes the named insured and any person using the owned vehicle with the permission of the named insured. As Founders and Safeway note, unless the person qualifies as an "insured person," the coverage exclusions never come into play because the person is not covered by the policy in the first instance. This means that the term "entitled," as used in the subject exclusion, cannot refer to entitlement based on permission or ownership because the issue of whether the person using the vehicle

has a reasonable belief that he or she is entitled to do so only arises after issues of permission or ownership have been satisfied. If we were to adopt Allstate's interpretation, the coverage exclusion would serve no real purpose, since it would encompass permission and ownership issues already considered at the outset when determining if the person qualifies as an "insured person." We must assume, however, that every provision in an insurance policy was intended to serve a purpose. *Rich*, 226 Ill. 2d at 371; *Crum & Forster*, 156 Ill. 2d at 391. Because Allstate's reading of the coverage exclusion is inconsistent with the policy as a whole, and would render the exclusion superfluous, we reject Allstate's argument that its interpretation is a reasonable one.

The question remains whether the "average, ordinary, normal, reasonable person" for whom these policies were written (*Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 395 (2005)) would understand that the exclusion applies to unlicensed drivers. We agree with Founders and Safeway that the answer is "yes."

Illinois law with respect to driving privileges is clear. With limited exception not relevant here, no person shall drive a motor vehicle in this state unless such person has a "valid license." 625 ILCS 5/6–101(a), (b) (West 2008). A person driving on a revoked or suspended license is guilty of a Class A misdemeanor. 625 ILCS 5/6–303(a) (West 2008). Irrespective of whether a person owns the vehicle, or is a permissive user, without a valid license, a person cannot have a reasonable belief that he or she is entitled to drive in this state. Without a valid license, a person has not been given the "right" to drive; has not been "qualified" to drive; has not been "furnished with proper grounds" for doing so. See Webster's Third New International Dictionary 758 (1993). Accordingly, each of the six drivers at issue here, who either never obtained a license or whose license was suspended, could not, as a matter of law, have a reasonable belief that he was entitled to drive simply because he owned the car or was given the keys.

Support for this conclusion is found in *Century National Insurance Co. v. Tracy*, 339 Ill. App. 3d 173 (2003). There, James Tracy, who did not possess a valid license, was driving a pickup truck, owned by the family business, when he was involved in an accident

with another vehicle, sustaining personal injuries. James collected $50,000 from the other driver's insurer and then sought to recover an additional amount pursuant to the underinsured-motorist coverage provisions of the Century National policy which insured the pickup truck. Century National sought declaratory relief, citing the policy's reasonable-belief exclusion. Much like Founders and Safeway in the present case, Century National argued that because James did not have a valid license at the time of the accident, he could not reasonably believe he was entitled to drive the pickup truck. The appellate court affirmed the trial court's ruling in favor of Century National, stating that "the trial court was correct in holding that, without a valid driver's license, an individual cannot reasonably believe that he or she is entitled to use a motor vehicle in Illinois." *Tracy*, 339 Ill. App. 3d at 176. Although James argued that he was an insured under the policy as a co-owner of the business, the appellate court rejected this argument:

> "The public policy of Illinois is well known and well understood: a driver must possess a valid driver's license to operate a motor vehicle in Illinois. *** James did not possess a valid license at the time of the accident and had not possessed one for 14 years prior to the accident. Nothing in the insurance policy could overcome James's legal inability to drive. Therefore, a finding that James reasonably believed that he could use the vehicle, even though he did not have a valid driver's license, would violate Illinois public policy." *Tracy*, 339 Ill. App. 3d at 177.

Like James Tracy, the drivers in the present litigation could not overcome their legal inability to drive by relying on an ownership interest in the vehicle or permission from the owner to use the vehicle.

Allstate argues that if the coverage exclusion is intended to apply to a person's legal inability to drive, Safeway and Founders could have included a provision so stating. Allstate notes that an earlier form of the Safeway policy contained an "Unlicensed Driver Exclusion." Allstate argues that Safeway chose to replace an express and presumably clear policy provision with an overly broad and ambiguous exclusion, opening the door for denial of coverage in other instances where drivers of insured vehicles may not be in full compliance with other provisions of the Illinois Vehicle Code. Allstate notes, for

-11-

example, that the Illinois Vehicle Code prohibits persons from driving while intoxicated (625 ILCS 5/11–501(a) (West 2008)); driving a vehicle that is too large or too heavy (625 ILCS 5/15–101 (West 2008)); or driving a vehicle that is unsafe or that does not have proper lighting (625 ILCS 5/12–101 (West 2008)). Allstate argues that Founders and Safeway could seek to deny coverage based on these code violations, claiming that the driver could not have had a reasonable belief that he or she was entitled to drive under these circumstances. Allstate posits that coverage might even be denied where the driver is old and feeble.

Safeway responds that its policy language was changed in response to the *Tracy* decision, and that it intended the new exclusion to be interpreted in the same manner as the identical policy language at issue in *Tracy*. Safeway also maintains that it "does not deny coverage for drunk driving or speeding, and Safeway does not deny coverage to anyone for being old or feeble." Founders similarly states that it "does not seek by its exclusion to preclude coverage for intoxicated drivers" and has not, at any point, sought to utilize its exclusion in the circumstances Allstate describes, nor does Founders foresee doing so in the future.

We need not consider an earlier form of the Safeway policy, or speculate why that form was amended, as that is not the contract to which the parties to the present litigation have bound themselves. We also need not speculate as to the myriad of other factual scenarios to which the exclusion might apply. The issue before us is much narrower. The issue is whether, as a matter of law, a person without a valid driver's license can have a reasonable belief that he or she is entitled to drive. That the exclusion could conceivably apply in other factual circumstances does not mean that the exclusion is ambiguous as to unlicensed drivers.

Finally, Allstate argues that even if the reasonable-belief exclusion unambiguously applies to unlicensed drivers, this court should hold that the exclusion violates Illinois public policy because it operates as an improper penalty and is therefore void. In support, Allstate cites *Hertz Corp. v. Garrott*, 238 Ill. App. 3d 231 (1992).

In the *Hertz* case, our appellate court held that a provision in a car rental agreement, which disclaimed all liability coverage where the driver engaged in a prohibited use–operating the vehicle while

-12-

intoxicated–was void as against public policy, and that the liability provision in the rental agreement, which provided coverage beyond the required statutory minimum, would be given full force and effect. *Hertz*, 238 Ill. App. 3d at 236.[5] In so holding, the appellate court quoted with approval a Delaware Supreme Court opinion which invalidated a policy provision that excluded coverage for an insured convicted of operating a motor vehicle while under the influence of alcohol:

> " '[T]he fixing of penalties for antisocial conduct is, in the first instance, a government responsibility through legislative response. The Delaware General Assembly has expressly determined the consequences which result from a conviction for driving under the influence. These sanctions include the criminal penalties of fine and/or imprisonment [citation] and license revocation through administrative action [citation]. We do not believe that the General Assembly, in addition to the imposition of these substantial penalties, also intended, by implication, to work a forfeiture of insurance protection purchased in conformity with State law.' " *Hertz*, 238 Ill. App. 3d at 238-39, quoting *Bass v. Horizon Assurance Co.* 562 A.2d 1194, 1197 (Del. 1989).

The *Hertz* court opined that, similar to the Delaware case, the car rental company, a private entity, did not have the ability to impose a sanction upon private citizens for driving while intoxicated, in the name of public policy, "when such sanctions work a hardship upon the general public and, at the same time, benefit the rental agency and/or its insurer." *Hertz*, 238 Ill. App. 3d at 239.

The present cases do not involve a liability exclusion based on the intoxication of the driver. Indeed, as already indicated, Founders and Safeway disavow any intention of attempting to apply the present exclusion to intoxicated drivers. Allstate argues, however, that just as the car rental company in *Hertz* could not penalize an intoxicated driver with loss of coverage where the legislature has already fixed

---

[5]Although the intoxicated driver in the *Hertz* case was unlicensed, the appellate court opinion addressed only the intoxication provision in the car rental agreement.

-13-

sanctions for driving while intoxicated, Founders and Safeway cannot usurp the role of the legislature and penalize unlicensed drivers with loss of coverage where the legislature has fixed sanctions for driving without a valid license.

We do not agree with Allstate that excluding liability coverage for unlicensed drivers necessarily amounts to a usurpation of the legislature's authority to fix penalties for criminal conduct. Insurers are not required to cover every possible loss and may legitimately limit their risks. *Progressive*, 215 Ill. 2d at 136. Allstate maintains, however, that Founders and Safeway are not merely limiting their risks; they are denying coverage to a group of persons–unlicensed drivers–which is contrary to section 7–317(b)(2) of the Illinois Vehicle Code (625 ILCS 5/7–317(b)(2) (West 2008)). Allstate posits that this court's holdings in *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369 (2001), and *Progressive* support its conclusion that the reasonable-belief exclusion conflicts with section 7–317(b)(2) and should be deemed void.

Section 7–317(b)(2), which is part of the Illinois Safety and Family Financial Responsibility Law, contains an omnibus clause provision. That is, it mandates that a motor vehicle liability policy shall cover the named insured and any other person using the vehicle with the insured's permission. 625 ILCS 5/7–317(b)(2) (West 2008). We agree with Allstate that an insurance policy provision which conflicts with section 7–137(b)(2) violates Illinois public policy and will be deemed void. "[A] statute that exists for protection of the public cannot be rewritten through a private limiting agreement." *Progressive*, 215 Ill. 2d at 129. We disagree, however, that under our analyses in *Smith* and *Progressive* the reasonable-belief exclusion conflicts with the statute.

In *Smith*, the named insured left his vehicle with a valet service for parking. When the valet service later returned the vehicle to him, the insured's passenger sustained personal injuries when the vehicle rolled backwards as she was entering the car. State Farm, which insured the vehicle, disclaimed liability coverage based on a "car business" exclusion. Under that exclusion, no coverage existed while any insured vehicle was "being repaired, serviced or used by any person employed or engaged in any way in a car business." A car business included a business or job where the purpose was to park motor vehicles.

We held that the car-business exclusion conflicted with section 7–317(b)(2) and thus violated Illinois public policy:

> "When a vehicle owner gives his vehicle to a person engaged in an automobile business, the owner is also giving that person the express or implied permission to use the vehicle. Therefore, a provision written into an insurance policy that excludes coverage for persons engaged in an automobile business necessarily excludes coverage for persons who are using an insured's vehicle with the insured's express or implied permission. The exclusion thus violates section 7–317(b)(2) of the Illinois Vehicle Code." *Smith*, 197 Ill. 2d at 374.

Allstate argues that the reasonable-belief exclusion at issue here, like the car-business exclusion at issue in *Smith*, contravenes Illinois public policy because the exclusion seeks to bar coverage for persons who are required by statute to be covered under an automobile liability policy–the named insured and any permissive user. If Allstate is correct, then virtually any limitation on liability coverage would violate public policy. But this court, in the *Progressive* opinion, has already rejected such an argument.

In *Progressive*, we considered whether a food-delivery exclusion violated section 7–317(b)(2) (625 ILCS 5/7–317(b)(2) (West 2000)). Based on this exclusion, the insurer, Progressive Universal Insurance Company of Illinois, disclaimed any duty to defend or indemnify the insured's son who, while making pizza deliveries in the insured vehicle, struck and injured a pedestrian. The injured party's insurer, Liberty Mutual Fire Insurance Company, argued that our holding in *Smith* applied with equal force to the food-delivery exclusion and that such exclusion should be found void as against public policy. We rejected this argument, noting a significant factual distinction between the car-business exclusion in *Smith* and the food-delivery exclusion at issue in *Progressive*. *Progressive*, 215 Ill. 2d at 133.

The car-business exclusion only applied to permissive users. Thus, conduct which would have been covered if undertaken by the insured would not be covered if undertaken by a permissive user of the insured vehicle. This disparity in coverage was inconsistent with the statutory requirement that liability policies must cover both the named insured and anyone using the vehicle with the insured's permission.

-15-

*Progressive*, 215 Ill. 2d at 133. The pizza-delivery exclusion, however, applied equally to the named insured and permissive users; no one was exempt from the food-delivery exclusion, and thus no possibility existed that liability coverage afforded the insured would not be extended to a permissive user of the vehicle. *Progressive*, 215 Ill. 2d at 134.

In *Progressive*, we expressly rejected the argument that the only valid coverage exclusions are those authorized by the legislature:

> "That permissive users must be covered along with the named insured in no way compels the conclusion that exclusions are never permissible. Inclusion of permissive users goes to the issue of *who* must be covered. It says nothing of *what risks* must be covered. To hold that requiring coverage for permissive users means that insurers are forbidden from excluding certain types of risks from coverage requires a leap in reasoning that neither the language of the statute nor the rules of statutory construction will support." (Emphasis in original.) *Progressive*, 215 Ill. 2d at 137.

We determined that, through adoption of section 7–317(b)(2), the legislature simply intended to make certain that the common practice of entrusting one's vehicle to another person does not preclude an injured party from obtaining payment for otherwise covered losses. *Progressive*, 215 Ill. 2d at 137. We observed that the legislature could have barred insurers from excluding certain risks from coverage, but did not do so, and concluded that the legislature must have intended that coverage exclusions may be included in liability policies, as evinced by the statutory requirement that insurance cards "contain a disclaimer admonishing policyholders to '[e]xamine policy exclusions carefully.' " *Progressive*, 215 Ill. 2d at 138, quoting 625 ILCS 5/7–602 (West 2000).

The reasonable-belief exclusion at issue here, like the food-delivery exclusion at issue in *Progressive*, applies equally to the named insured and anyone using the vehicle with the insured's permission. Pursuant to our analysis in *Progressive*, we hold that the exclusion does not violate Illinois public policy as set forth in section 7–317(b)(2) of the Vehicle Code. Founders and Safeway may limit their risk by excluding insureds and permissive users alike who lack the most basic requirement for driving in this state: a valid license. We

recognize that, depending upon the circumstances of a particular case, the reasonable-belief exclusion, like any exclusion, may result in no insurance coverage from which injured third parties may be compensated. Such coverage gaps, however, implicate policy concerns that are properly considered by the legislature, not this court. See *Progressive*, 215 Ill. 2d at 140 n.3.

In light of our holding, we need not consider Allstate's arguments underlying its request for cross-relief in the Munoz case. Munoz did not possess a valid license. Thus, even if, as Allstate argues, the named-driver exclusion should not apply against Munoz (see 389 Ill. App. 3d at 756-57), the reasonable-belief exclusion does apply, and Founders is under no duty to defend or indemnify Munoz.

## CONCLUSION

For the reasons set forth above, we affirm the appellate court judgment in the Munoz case affirming the trial court's grant of summary judgment in favor of Founders. We reverse the appellate court's judgment in the LeVan, Honchar, Vallarta, and Tecpanecatl cases that reversed the trial court's grant of summary judgment in favor of Founders. We also reverse the appellate court judgment in the Fernandez case that reversed the trial court's grant of summary judgment in favor of Safeway. Allstate's motions for summary judgment in these six cases were properly denied by the trial court.

*No. 108605–Affirmed in part and reversed in part.*

*No. 108612–Reversed.*